_____

)
WASHINGTON ALLIANCE OF        )
TECHNOLOGY WORKERS,         )
                                    )
        Plaintiff,              )
                                    )
        v.                   )       Civil Action No. 16-1170 (RBW)
                                    )
U.S. DEPARTMENT OF          )
HOMELAND SECURITY, et al.,     )
                                    )
        Defendants.        )
_____)

## MEMORANDUM OPINION

The plaintiff, the Washington Alliance of Technology Workers ("Washtech"), a collective-bargaining organization representing science, technology, engineering, and mathematics ("STEM") workers, brings this action against the defendants, the United States Department of Homeland Security ("DHS"), the Secretary of Homeland Security, the United States Immigration and Customs Enforcement ("ICE"), the Director of ICE, the United States Citizenship and Immigration Services ("Citizenship and Immigration Services"), and the Director of Citizenship and Immigration Services (collectively, the "Government"), challenging (1) the DHS's 1992 regulation creating a twelve-month optional practical training ("OPT") program (the "OPT Program") for nonimmigrant foreign nationals admitted into the United States with an F-1 student visa, Pre-Completion Interval Training; F-1 Student Work Authorization, 57 Fed. Reg. 31,954 (July 20, 1992) (codified at 8 C.F.R. pts. 214 & 274a) (the "1992 OPT Program Rule"); and (2) the DHS's 2016 regulation permitting eligible F-1 student visa holders with STEM degrees to apply for an extension of their participation in the OPT Program for up to an additional twenty-four months, Improving and Expanding Training

Opportunities for F-1 Nonimmigrant Students With STEM Degrees and Cap-Gap Relief for All Eligible F-1 Students, 81 Fed. Reg. 13,040 (Mar. 11, 2016) (codified at 8 C.F.R. pts. 214 & 274a) (the "2016 OPT Program Rule"). See Complaint ("Compl.") ¶¶ 1–5, 8. Currently pending before the Court are (1) the Defendants' Renewed Motion to Dismiss ("Gov't's 2d Mot. to Dismiss") and (2) the National Association of Manufacturers, the Chambers of Commerce of the United States of America, and the Information Technology Industry Council's (collectively, the "Organizations") Motion to Intervene ("Orgs.' Mot. to Intervene"). Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must deny the Government's renewed motion to dismiss and grant the Organizations' motion to intervene.

## I.     BACKGROUND

The Court has previously set forth the factual background of this case, see Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec., 249 F. Supp. 3d 524, 531–33 (D.D.C. 2017) (Walton, J.), aff'd in part, rev'd in part, 892 F.3d 332 (D.C. Cir. 2018), and therefore will not recite it again here. The Court will, however, briefly summarize the procedural posture of this case, which is pertinent to the resolution of the pending motions.

Washtech filed its Complaint on June 17, 2016. See Compl. at 1. As previously noted by the Court,

Washtech allege[d] that the 1992 OPT Program Rule and the 2016 OPT Program Rule exceed the authority of [the] DHS [under] several provisions of the

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) ("Gov't's 1st Mot. to Dismiss"); (2) the Memorandum of Law in Support of Motion to Intervene ("Orgs.' Mot. to Intervene Mem."); (3) the Defendants' Memorandum of Law in Support of Their Renewed Motion to Dismiss ("Gov't's 2d Mot. to Dismiss Mem."); (4) the Plaintiff's Response to Motion to Intervene ("Washtech's Mot. to Intervene Opp'n"); (5) the Defendants' Opposition to Putative Intervenors' Motion to Intervene ("Gov't's Mot. to Intervene Opp'n"); (6) the Plaintiff's Response to Defendants' Renewed Motion to Dismiss ("Washtech's 2d Mot. to Dismiss Opp'n"); (7) the Reply Memorandum of Law in Support of Motion to Intervene ("Orgs.' Mot. to Intervene Reply"); (8) the Defendants' Reply Brief in Support of Their Renewed Motion to Dismiss ("Gov't's 2d Mot. to Dismiss Reply"); (9) the Notice of Supplemental Authority ("Orgs.' Supp. Not."), and (10) the Response to Proposed Intervenors' Notice of Supplemental Authority ("Washtech's Resp.").

> Immigration and Nationality Act ("INA") (Counts I and II); that the 2016 OPT
> Program Rule was issued in violation of the Congressional Review Act . . . because
> of non-compliance with the notice and comment and incorporation by reference
> requirements of the statute (Count III); and that the 2016 OPT Program Rule [was]
> arbitrary and capricious (Count IV).

Wash. All. of Tech. Workers, 249 F. Supp. 3d at 533 (second alteration in original) (citations and internal quotation marks omitted). On August 26, 2016, the Government moved to "dismiss this lawsuit in its entirety . . . for lack of subject matter jurisdiction and failure to state a claim." Gov't's 1st Mot. to Dismiss at 2. On April 19, 2017, the Court granted the Government's motion to dismiss and dismissed Washtech's Complaint in its entirety. See Wash. All. of Tech. Workers, 249 F. Supp. 3d at 556. Specifically, the Court dismissed Count I of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) "for lack of standing to challenge the 1992 OPT Program Rule" and dismissed Counts II through IV pursuant to Federal Rule of Civil Procedure 12(b)(6) "due to Washtech's failure to plausibly state claims that are entitled to relief." Id. On appeal, the District of Columbia Circuit "affirm[ed] th[is] [ ] [C]ourt's dismissal of Counts I, III[,] and IV," but "reversed its dismissal of Count II." Wash. All. of Tech Workers, 892 F.3d at 348. With respect to Count II, the Circuit reasoned that "whether Count II may proceed remains in question" because, although "the six-year statute of limitations on . . . [Washtech's] challenge closed in 1998[,] Washtech asserts[] [ ] that it may still [raise its] challenge . . . under the reopening doctrine," id. at 345, and "if the DHS reopened the issue of whether the OPT [P]rogram as a whole is statutorily authorized in its notice of proposed rulemaking vis-à-vis the 2016 [OPT Program] Rule, its renewed adherence is substantively reviewable, and the challenge to the entire program may proceed," id. at 346 (citation and internal quotation marks omitted). The Circuit "decline[d] to address the question [of whether

the reopening doctrine is applicable] in the first instance and le[ft] it for th[is] [ ] Court to address on remand." Id.

On remand, the Court ordered the Government to file a renewed motion to dismiss addressing the issue of whether the reopening doctrine applies to Washtech's challenge to the OPT Program. See Order at 1–2 (Sept. 18, 2018), ECF No. 36. On October 18, 2018, the Government filed its renewed motion to dismiss, seeking dismissal of Count II of Washtech's Complaint pursuant to Rule 12(b)(1) and (b)(6), see Gov't's 2d Mot. to Dismiss at 1, which Washtech opposes, see generally Washtech's 2d Mot. to Dismiss Opp'n. On that same day, the Organizations filed their motion to intervene in this case. See Orgs.' Mot. to Intervene at 1. These motions are the subjects of this Memorandum Opinion.

## II.    STANDARDS OF REVIEW

### A.    Rule 12(b)(1) Motion to Dismiss

"Federal [district] courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Thus, the Court is obligated to dismiss a claim if it "lack[s] . . . subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction.'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Because "[i]t is to be presumed that a cause lies outside [a federal court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has subject-matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

The Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be

derived from the facts alleged.'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (internal quotation marks omitted). The Court "need not limit itself to the allegations of the complaint," id. at 14; rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the questions [of] whether it has jurisdiction [over] the case," Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

**B.      Rule 12(b)(6) Motion to Dismiss**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a motion to dismiss for "failure to state a claim upon which relief may be granted," Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that the plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged"). Although the Court must accept the facts pleaded as true, legal allegations devoid of factual support are not entitled to this presumption. See, e.g., Kowal, 16 F.3d at 1276. In addition to allegations asserted within the

four corners of the complaint, the Court may also consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**C.      Rule 24 Motion to Intervene**

Federal Rule of Civil Procedure 24 provides for both intervention as of right and permissive intervention. With respect to intervention as of right, Rule 24 provides in relevant part that,

> [o]n timely motion, the [C]ourt must permit anyone to intervene who[] . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The District of Columbia Circuit has distilled this rule into four factors for the Court to consider:

> (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action"; (3) whether "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) whether the "applicant's interest is adequately represented by existing parties."

Fund for Animals, Inc. v. Norton, 322 F.3d 728, 731 (D.C. Cir. 2003) (quoting Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998)). An applicant "seeking to intervene as of right must [also] demonstrate that it has standing under Article III of the Constitution." Id. at 731–32.

Rule 24 also authorizes permissive intervention where, "[o]n timely motion," an applicant demonstrates that it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "[P]ermissive intervention is an inherently discretionary enterprise" for the Court. EEOC v. Nat'l Children's Ctr., Inc., 146 F.3d 1042,

1046 (D.C. Cir. 1998).  However, the putative intervenor must ordinarily present: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action."  Id.  Additionally, the Court "must consider whether the [requested] intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  "It remains . . . an open question in this [C]ircuit whether Article III standing is required for permissive intervention."  Defs. of Wildlife v. Perciasepe, 714 F.3d 1317, 1327 (D.C. Cir. 2013) (first alteration in original) (quoting In re Endangered Species Act Section 4 Litig., 704 F.3d 972, 980 (D.C. Cir. 2013)).

### III.    ANALYSIS

The Organizations have represented that they take no position on the applicability of the reopening doctrine and intend to proceed in this case only if the Government's renewed motion to dismiss is denied.  See Orgs.' Mot. to Intervene Mem. at 7.  Therefore, the Court will first address the Government's renewed motion to dismiss and then, if necessary, address the Organizations' motion to intervene.

### A.    The Government's Renewed Motion to Dismiss

The Government moves to dismiss Washtech's remaining claim (Count II) pursuant to Rule 12(b)(1) and (b)(6), see Gov't's 2d Mot. to Dismiss at 1–2, arguing that "[b]ecause the statute of limitations for Washtech's challenge to the agency's authorization of [the] OPT [Program] expired on July 20, 1998, Washtech's remaining claim is time-barred," Gov't's 2d Mot. to Dismiss Mem. at 13 (citation omitted), and that "[t]he reopening doctrine does not help Washtech because [the] DHS did not reopen the issue of its authority to issue a general OPT rule," id. at 14.  In response, Washtech contends that "[t]he substantive changes to the OPT [P]rogram in the 2016 OPT [Program] Rule make [the Government's] statute of limitations

argument inapplicable and permit Washtech to challenge whether the one-year OPT term is within [the] DHS's authority without resorting to the reopening doctrine." Washtech's 2d Mot. to Dismiss Opp'n at 7. Alternatively, Washtech argues that "the 2016 OPT [Program] Rule is reviewable under the reopening doctrine." Id. at 8.

The Court first addresses Washtech's argument that the Court need not "resort[] to the reopening doctrine" because "[t]he substantive changes to the OPT [P]rogram in the 2016 OPT [Program] Rule make [the Government's] statute of limitations argument inapplicable and permit Washtech to challenge whether the one-year OPT term is within DHS's authority." Washtech's 2d Mot. to Dismiss Opp'n at 7. The Circuit has already concluded that Washtech's "challenge to the DHS's authority to provide for OPT workers at all implicates the authority first granted by the 1992 [OPT Program] Rule," and thus, "the six-year statute of limitations on such a challenge closed in 1998." Wash. All. of Tech. Workers, 892 F.3d 332 at 345. This Court may not revisit that holding. Washtech's challenge is therefore time-barred unless the Court concludes that the reopening doctrine is applicable.

Accordingly, the Court will assess the applicability of the reopening doctrine. The Government argues that the 2016 OPT Program Rule is not reviewable under the reopening doctrine because (1) "the 2015 N[otice of Proposed Rulemaking (the '2015 Notice')] did not suggest any change to the agency's interpretation of its authority to authorize [the] OPT [Program,]" and the "DHS expressly disclaimed reconsideration of that program" in its Notice, Gov't's 2d Mot. to Dismiss Mem. at 17, and (2) "the 2016 [ ] OPT [Program Rule] added nothing substantively to the OPT [P]rogram generally," id. Washtech responds that the 2016 OPT Program Rule is reviewable under the reopening doctrine because (1) "the post-1992 rulemaking necessarily raises the question of whether the previous rulemaking [was] lawful,"

Washtech's 2d Mot. to Dismiss Opp'n at 10; (2) "the rulemaking for the 2016 OPT [Program] Rule was the first time that the public had the opportunity to comment on work authorizations under the OPT [P]rogram," id. at 14; and (3) the 2015 [N]otice . . . contained many changes to the existing OPT [Program]," id. at 13.  Alternatively, Washtech argues that even if the 2016 OPT Program Rule did not explicitly or implicitly reopen the OPT Program as a whole to review, the 2016 OPT Program Rule constructively reopened the OPT Program to review because "[t]he transformation of the OPT [P]rogram into a means to provide labor to industry could not have been anticipated from the statements in the 1992 OPT [Program] Rule." Id. at 16. For the following reasons, the Court agrees with Washtech that the 2016 OPT Program Rule reopened Washtech's ability to challenge the DHS's legal authority to implement the OPT Program.

    "The reopening doctrine, 'well established in this [C]ircuit,' is 'an exception to statutory limits on the time for seeking review of an agency decision.'" CTIA-Wireless Ass'n v. FCC, 466 F.3d 105, 110 (D.C. Cir. 2006) (quoting Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd., 158 F.3d 135, 141 (D.C. Cir. 1998)).  "The doctrine 'arise[s] . . . where an agency conducts a rulemaking or adopts a policy on an issue at one time, and then in a later rulemaking restates the policy or otherwise addresses the issue again without altering the original decision.'" Id. (alterations in original) (quoting Nat'l Ass'n of Reversionary Prop. Owners, 158 F.3d at 141).  "It is designed 'to ensure that when the agency . . . by some new promulgation creates the opportunity for renewed comment and objection, affected parties may seek judicial review, even when the agency decides not to amend the long-standing rule at issue.'" P & V Enters. v. U.S. Army Corps of Eng'rs, 516 F.3d 1021, 1024 (D.C. Cir. 2008) (alteration in original) (internal quotation marks omitted) (quoting Gen. Motors Corp. v. EPA, 363 F.3d 442,

449–50 (D.C. Cir. 2004)).  "The doctrine only applies, however, where the entire context demonstrates that the agency 'ha[s] undertaken a serious, substantive reconsideration of the [existing] rule.'"  Id. (alterations in original) (first quoting Pub. Citizen v. Nuclear Regulatory Comm'n, 901 F.2d 147, 150 (D.C. Cir. 1990); then quoting Nat'l Mining Ass'n v. U.S. Dep't of Interior, 70 F.3d 1345, 1352 (D.C. Cir. 1995)).  In Ohio v. EPA, the Circuit

> inferred that an agency has reopened a previously decided issue in a case where the agency (1) proposed to make some change in its rules or policies, (2) called for comments only on new or changed provisions, but at the same time (3) explained the unchanged, republished portions, and (4) responded to at least one comment aimed at the previously decided issue.

Pub. Citizen v. Nuclear Reg. Comm'n, 901 F.2d 147, 150 (D.C. Cir. 1990) (citing Ohio v. EPA, 838 F.2d 1325, 1328 (D.C. Cir. 1988)).

Here, the four factors articulated in Ohio are satisfied.  First, the 2015 Notice demonstrates that the DHS "proposed to make some change in its rules or policies."  Pub. Citizen, 901 F.2d at 150; see Improving and Expanding Training Opportunities for F-1 Nonimmigrant Students With STEM Degrees and Cap-Gap Relief for All Eligible F-1 Students, 80 Fed. Reg. 63,376, 63,376 (Oct. 19, 2015) (codified at 8 C.F.R. pts. 214 & 274a) (the "2015 Notice") ("The . . . []DHS[] proposes to amend its F-1 nonimmigrant student visa regulations on optional practical training (OPT) for certain students with degrees in . . . []STEM[] from U.S. institutions of higher education.  Specifically, the proposal would allow such F-1 STEM students who have elected to pursue [twelve] months of OPT in the United States to extend the OPT period by [twenty-four] months.").  Second, the 2015 Notice "called for comments only on new or changed provisions."  Pub. Citizen, 901 F.2d at 150; see 2015 Notice, 80 Fed. Reg. at 63,377 (requesting comments on "changes to the current OPT [P]rogram by lengthening the extension of the OPT period for certain F-1 students who have earned STEM degrees").  Third, the DHS's

2015 Notice "explained the unchanged, republished portions" of the proposed 2016 OPT

Program Rule. <u>Pub. Citizen</u>, 901 F.2d at 150; <u>see</u> 2015 Notice, 80 Fed. Reg. at 63,380–81

(providing background information on the OPT Program); 2016 OPT Program Rule, 81 Fed.

Reg. at 13,044–45 (same). And finally, the DHS "responded to at least one comment aimed at

the previously decided issue" of the statutory authorization for the OPT Program. <u>Pub. Citizen</u>,

901 F.2d at 150; <u>see</u> 2016 OPT Program Rule, 81 Fed. Reg. at 13,058–62 (responding to

comments "concerning the legal authority underpinning the OPT [P]rogram").

> However, the Circuit has cautioned that although

> the four factors mentioned in . . . <u>Ohio</u> are indeed relevant evidence of reopening, [ ] the [C]ourt cannot stop there. It must look to the entire context of the rulemaking including all relevant proposals and reactions of the agency to determine whether an issue was in fact reopened. If in proposing a rule the agency uses language that can reasonably be read an as invitation to comment on portions the agency does not explicitly propose to change, or if in responding to comments the agency uses language that shows that it did in fact reconsider an issue, a renewed challenge to the underlying rule or policy will be allowed.

<u>Pub. Citizen</u>, 901 F.2d at 150.

On the one hand, the 2015 Notice does not "use[] language that can reasonably be read as

an invitation to comment on the portions the agency does not explicitly propose to change." <u>Id.</u>

As the Government correctly observes, <u>see</u> Gov't's 2d Mot. to Dismiss Mem. at 15, the 2015

Notice sought only comments related to "changes to the current OPT [P]rogram by lengthening

the extension of the OPT period for certain F-1 students who have earned STEM degrees." 2015

Notice, 80 Fed. Reg. at 63,377. Additionally, the 2016 OPT Program Rule explicitly stated that

"[t]o the extent that comments challenging [the] DHS's legal authority concerned the OPT

[P]rogram generally, such comments are outside the scope of this rulemaking, which relates

specifically to the availability of STEM OPT extensions" and that the "DHS did not propose to

modify the general post-completion OPT [P]rogram in the proposed rule." 2016 OPT Program

Rule, 81 Fed. Reg. at 13,059. The Circuit has found that a similar disclaimed weighed against finding that an agency reopened an issue. See Am. Road & Transp. Builders Ass'n v. EPA, 588 F.3d 1109, 1115 (D.C. Cir. 2009) ("conclud[ing] that [the agency] did not reopen reconsideration of the regulations [the plaintiff] asked it to revise" because, inter alia, the agency "sa[id] explicitly in its Notice of Proposed Rulemaking that it was not proposing to adopt the . . . changes requested by [the plaintiff] in its petition" (fifth alteration in original) (internal quotation marks omitted)).

On the other hand, "in responding to comments[,] the [DHS] use[d] language that show[ed] that it did in fact reconsider" its statutory authority for the OPT Program. Pub. Citizen, 901 F.2d at 150. Specifically, the final version of the 2016 OPT Program Rule demonstrates that the DHS responded to comments regarding its statutory authority for the OPT Program and did much more than "briefly reiterat[e] its prior reasoning" regarding its statutory authority for the OPT Program. Am. Iron & Steel Inst. v. EPA, 886 F.2d 390, 398 (D.C. Cir. 1989); see 2016 OPT Program Rule, 81 Fed. Reg. at 13,058–62. In the 1992 OPT Program Rule, the only discussion of the DHS's statutory authority to implement the OPT Program consisted of a list of statutory provisions. See 1992 OPT Program Rule, 57 Fed. Reg. at 31,955 ("The authority citation for part 214 continues to read as follows: Authority: 8 U.S.C. 1101, 1103, 1184, 1186a; 8 CFR part 2."); see also id. at 31,960 ("The authority citation for part 274a continues to read as follows: Authority: 8 U.S.C. 1101, 1103, 1324a, 8 CFR part 2."). By contrast, in the 2016 OPT Program Rule, in addition to relying on the provisions cited in the 1992 OPT Program Rule as support for the DHS's "longstanding interpretation of the INA," see 2016 OPT Program Rule, 81 Fed. Reg. at 13,059 (citing 8 U.S.C. §§ 1103(a), 1103(a)(1), 1101(a)(15)(F)(i), and 1184(a)(1) as support for the proposition that "the INA endows the Secretary with broad discretion to

12

promulgate regulations establishing the time and conditions under which such aliens may be admitted"), the DHS provided two additional justifications for its legal authority to implement the OPT Program: (1) "the longstanding congressional recognition of that interpretation," see id.; and (2) another member of this Court's analysis of Washtech's challenge to a previous iteration of the 2016 OPT Program Rule promulgated in 2008 (the "2008 OPT Program Rule"), see id. at 13,059–60 (citing Wash. All. of Tech Workers v. U.S. Dep't of Homeland Sec., 156 F. Supp. 3d 123 (D.D.C. 2015), judgment vacated, appeal dismissed, 650 F. App'x 13 (D.C. Cir. 2016)). New justifications for an established rule weigh in favor of finding a reopening. See CTIA-Wireless Ass'n, 466 F.3d at 112 (concluding that plaintiff's challenge to an agency order was reviewable under the reopening doctrine because, inter alia, "the NPA Order indisputably offer[ed] two new justifications not found in the 1990 Order or 1995 Order" (emphases omitted)); cf. P & V Enters., 516 F.3d at 1025 (concluding that a press release by the agency did not reopen the plaintiff's challenge to the agency's rule because "[i]t neither responded to comments nor presented new justifications for retaining the [ ] rule").  Accordingly, looking at the "entire context of the rulemaking," Pub. Citizen, 901 F.2d at 150, the Court concludes the 2016 OPT Program Rule's new justifications for the DHS's authority to implement the OPT Program outweighs any disclaimers suggesting that the DHS did not invite comments on that issue.

The Government's arguments against finding that the DHS reopening the issue of its statutory authority are unavailing.  First, while the Government does not contest that the DHS responded to comments regarding its legal authority to implement the OPT Program, see Gov't's 2d Mot. to Dismiss Mem. at 13–17, it argues that in responding to those comments, the DHS "did not reopen the question of statutory authority" because "mechanically describing the history

of a regulatory program or referring back to that history does not reopen prior iterations of a rule to an [Administrative Procedure Act ('APA')] challenge," id. at 15.  Relying on American Iron and Steel Institute v. EPA for the proposition that "the 'reopening' rule of Ohio v. EPA is not a license for bootstrap procedures by which petitioners can comment on matters other than those actually at issue, goad an agency into a reply, and then sue on the grounds that the agency had re-opened the issue," Am. Iron & Steel Inst. v. EPA, 886 F.2d 390, 398 (D.C. Cir. 1989), the Government argues that that "[t]his same maneuver is at the core of Washtech's reopening argument," Gov't's 2d Mot. to Dismiss Mem. at 16.  However, American Iron and Steel Institute is distinguishable from the case at hand.  In American Iron and Steel Institute, the Circuit concluded that the agency did not "reopen the question" at issue because "[t]he [agency's] discussion [of that issue] lacked any sustained attempt to reiterate the reasons it had offered less than two years earlier," and, in response to comments on the issue, the agency "responded by stating that it reaffirm[ed] its previous position and at most briefly reiterat[ed] its prior reasoning."  Am. Iron & Steel Inst., 886 F.2d at 398 (emphasis omitted) (alteration in original) (internal quotation marks omitted); cf. Council Tree Commc'ns, Inc. v. FCC, 324 F. App'x 3, 5 (D.C. Cir. 2009) ("Merely acknowledging another federal entity's argument is not enough to constitute reopening, particularly when, as here, the acknowledgment is in a cursory footnote that summarily dismisses that argument.").  As discussed above, in responding to comments regarding its legal authority to implement the OPT Program, the DHS offered new justifications for its legal authority to implement the OPT Program.  Second, the Government argues that "the [2015 Notice] did not suggest any change to the agency's interpretation of its authority to authorize [the] OPT [Program]" and that the "DHS expressly disclaimed reconsideration of th[e] [OPT] [P]rogram."  Gov't's 2d Mot. to Dismiss Mem. at 17.  However, the Court has already

concluded that this disclaimer does not outweigh the DHS's language showing that it reconsidered its authority to implement the OPT Program, which supports that it reopened the issue. Finally, the Government argues that "the 2016 [ ] OPT [Program] Rule added nothing substantively to the OPT [P]rogram generally." Gov't's 2d Mot. to Dismiss Mem. at 17. The Court notes that the reopening doctrine does not require a <u>change</u> to an agency decision, but rather can be applied to <u>reconsideration</u> of an agency decision, even if the agency ultimately reaffirms and does not alter its decision. <u>See, e.g.</u>, <u>CTIA-Wireless Ass'n</u>, 466 F.3d at 110 ("The [reopening] doctrine 'arise[s] . . . when an agency conducts a rulemaking or adopts a policy on an issue at one time, and then in a later rulemaking restates the policy or otherwise addresses the issue again <u>without altering the original decision</u>.'" (emphasis added) (second and third alterations in original) (quoting <u>Nat'l Ass'n of Reversionary Prop. Owners</u>, 158 F.3d at 141)). Whether the 2016 OPT Program Rule altered the 1992 OPT Program Rule is therefore of no consequence to the Court's reopening analysis.

Thus, the Court concludes that the 2016 OPT Program Rule reopened the issue of the DHS's statutory authority to implement the OPT Program and Washtech's challenge to that authority is timely. Accordingly, the Government's renewed motion to dismiss must be denied.[2]

## B.  The Organizations' Motion to Intervene

The Organizations seek to intervene as a matter of right pursuant to Rule 24(a), or, in the alternative, permissively pursuant to Rule 24(b). <u>See</u> Orgs.' Mot. to Intervene at 2. Both

---

[2] Washtech also requests that the Court rule on the merits of its challenge to the OPT Program at this stage of the litigation without any further submissions by the parties. <u>See</u> Washtech's 2d Mot. to Dismiss Opp'n at 17. It argues that "[b]ecause a court can resolve any purely legal questions on a motion to dismiss there is no inherent barrier to reaching the merits at the 12(b)(6) stage." <u>Id.</u> (quoting <u>Int'l Longshoremen's Assn, AFL-CIO v. Nat'l Mediation Bd.</u>, No. Civ. 04-824 (RBW), 2005 WL 850358, at *2 (D.D.C. Mar. 30, 2005) (Walton, J.)). The Court, however, declines to consider the merits of Washtech's challenge to the OPT Program at this stage of the litigation, particularly when the Court does not have the benefit of briefing by the intervenor-defendants. <u>See</u> Part III.B., <u>infra</u> (permitting the Organizations to intervene in this matter).

Washtech and the Government oppose the Organizations' motion on the ground that the

Organizations fail to satisfy the requirements of Rule 24. See Washtech's Mot. to Intervene

Opp'n at 1; Gov't's Mot. to Intervene Opp'n at 1. Washtech also opposes the motion on the

additional ground that the Organizations lack standing. See Washtech's Mot. to Intervene Opp'n

at 1. "Because [the Organizations'] Article III standing presents a question going to this

[C]ourt's jurisdiction, [the Court] [will] address it first . . . [before] consider[ing] the four factors

set forth in Rule 24(a)(2)." Fund for Animals, 322 F.3d at 732 (citation omitted).

## 1. Article III Standing

The Organizations argue that "[b]ecause the[y] . . . have a legally protectable interest in

the subject matter of the lawsuit and because their interests are at risk of being impaired, . . . they

have also established [Article III] standing." Orgs.' Mot. to Intervene Mem. at 10. Washtech

responds that the Organizations "lack standing to intervene" because they "cannot establish that

they have a [legally] cognizable interest that allegedly would be impaired if the [C]ourt denied

their motion to intervene." Washtech's Mot. to Intervene Opp'n at 6. The Government, on the

other hand, does not contest that the Organizations have standing. See generally Gov't's Mot. to

Intervene Opp'n.

As previously discussed, an applicant "seeking to intervene as a matter of right must

demonstrate that it has standing under Article III of the Constitution." Fund for Animals, 322

F.3d at 731–32. "To establish standing under Article III, a prospective intervenor—like any

party—must show (1) injury-in-fact, (2) causation, and (3) redressability." Fund for Animals,

322 F.3d at 732–33.

> [A]n association has standing to bring suit on behalf of its members when: (a) its
> members would otherwise have standing to sue in their own right; (b) the interests
> it seeks to protect are germane to the organization's purpose; and (c) neither the

claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977); see also Am. Chemistry Council v. Dep't of Transp., 468 F.3d 810, 818–19 (D.C. Cir. 2006) ("Where an organization alleges associational standing, it must show 'that at least one member . . . has standing to pursue its challenge.'" (alteration in original) (emphasis added) (quoting Am. Library Ass'n v. FCC, 406 F.3d 689, 696 (D.C. Cir. 2005)). And, to challenge an agency regulation that does not directly regulate an association or its members, an association "must show a 'substantial probability' that one of its members will be harmed as a result of [an agency] rule." AARP v. EEOC, 226 F. Supp. 3d 7, 18 (D.D.C. 2016) (quoting Stilwell v. Office of Thrift Supervision, 569 F.3d 514, 518 (D.C. Cir. 2009)).

The first prong of the Hunt associational standing test requires the Court to determine whether the Organizations' members would have standing to sue in their own right, i.e., whether at least one of their members can establish injury-in-fact, causation, and redressability. See Hunt, 432 U.S. at 343; Fund for Animals, 322 F.3d at 733. With respect to injury-in-fact, Washtech correctly argues that "[e]mployers[, i.e., the Organizations' members,] are not involved in the OPT application process at all," and thus, the 2016 OPT Program Rule does not directly regulate them. Washtech's Mot. to Intervene Opp'n at 5. Accordingly, the Organizations "must show a 'substantial probability'" that one of [their] members will be harmed" in order to establish injury-in-fact sufficient for purposes of associational standing. AARP, 226 F. Supp. 3d at 18 (quoting Stilwell, 569 F.3d at 518). The Organizations argue that there is a substantial probability that at least one of their members, Intel Corporation ("Intel"), would be injured if the OPT Program is deemed unlawful. See Orgs.' Mot. to Intervene Mem. at 11. Specifically, the Organizations represent that Intel "currently employs 1,100 individuals who

are dependent on the OPT [P]rogram for employment authorization" and that "[b]ecause those 1,100 current employees did not [prevail in] the most recent H1-B lottery, they would be stripped of their work authorization if the OPT [P]rogram were vacated," and "Intel would have no choice but to terminate their employment, at massive cost to . . . the company economically." Id. at 9. Washtech responds that the Organizations have not established injury-in-fact because "the ability to hire non-students working in student visa status cannot possibly be a legally protected interest." Washtech's Mot. to Intervene Opp'n at 6. However, based on the Organizations' representations, the Court concludes that there is a "substantial probability" that Intel will suffer economic harm if the OPT Program is vacated, and accordingly, it concludes that the Organizations have demonstrated injury-in-fact for purposes for associational standing. AARP, 226 F. Supp. 3d at 18; see Stilwell, 569 F.3d at 518 ("Under the [Office of Thrift Supervision] rule, it is substantially probable that [mutual holding company] subsidiaries w[ould] adopt charter provisions that w[ould] cause Stilwell economic harm; he therefore has standing to challenge the rule as a violation of the APA."); Sabre, Inc. v. Dep't of Transp., 429 F.3d 1113, 1119 (D.C. Cir. 2005) (concluding that a plaintiff company "ha[d] demonstrated, as a consequence of the Final Rule . . . , a sufficient likelihood of economic injury to establish standing" because "[i]t [wa]s reasonably certain that [the company's] business decisions w[ould] be affected" (citations and internal quotation marks omitted)).

With respect to causation and redressability, Washtech does not dispute, see generally Washtech's Mot. to Intervene Opp'n, and the Court easily concludes, that at least one of the Organizations' members satisfies these elements. The Organizations have already demonstrated that Intel, one of the Organizations' members, would suffer an immediate economic injury as a direct result of any judgment vacating the OPT Program, see Orgs.' Mot. to Intervene Mem. at 9,

and "[t]hat direct causal relationship between [ ] vacating the [OPT Program] and the financial injury that such judicial action would inflict upon [at least one of the Organizations'] members satisfies the elements of causation and redressability," <u>Alfa Int'l Seafood v. Ross</u>, Civ. Action No. 17-00031 (APM), 2017 WL 1906586, at *2 (D.D.C. May 8, 2017). Accordingly, the Court concludes that the Organizations have established that at least one of their members would have standing to sue in its own right and that the first prong of the <u>Hunt</u> associational standing test is satisfied.

The second prong of the <u>Hunt</u> associational standing test requires the Court to determine whether "the interests [the Organizations] seek to protect are germane to [their] purpose." <u>Hunt</u>, 432 U.S. at 343.

> The germaneness requirement mandates "pertinence between [the] litigation subject and organizational purpose." Germaneness is required for "the modest yet important" purpose of "preventing litigious organizations from forcing the federal courts to resolve numerous issues as to which the organizations themselves enjoy little expertise and about which few of their members demonstrably care."

<u>Ctr. for Sustainable Econ. v. Jewell</u>, 779 F.3d 588, 597 (D.C. Cir. 2015) (citations omitted) (quoting <u>Humane Soc'y of the U.S. v. Hodel</u>, 840 F.2d 54, 57–58 (D.C. Cir. 1988)). The Organizations represent, and Washtech does not dispute, that "each of [their] missions includes advocating for a policy agenda that helps th[eir] [member] companies compete in the global economy and create jobs across the United States," Orgs.' Mot. to Intervene Mem. at 12; <u>see</u> Washtech's Mot. to Intervene Opp'n at 4–8, and "defending regulations and policies that are important to their members' ability to maintain competitive workforces," Orgs.' Mot. to Intervene Mem. at 12. The Organizations' goal in this litigation—to defend the OPT Program— "is unquestionably pertinent to [the Organizations'] core organizational mission," <u>Ctr. for Sustainable Econ.</u>, 779 F.3d at 597, because many of the Organizations' members "rely

substantially on [the] OPT [Program] and [the 2016 OPT Program Rule] to fulfill their talent needs," Orgs.' Mot. to Intervene Mem. at 12. The Court therefore concludes that the Organizations satisfy the second prong of the <u>Hunt</u> associational standing test.

Finally, the third prong of the <u>Hunt</u> associational standing test requires the Court to determine that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." <u>Hunt</u>, 432 U.S. at 343. The Organizations argue that their participation in this lawsuit "does not require the participation of their individual members" because "[t]he issues to be resolved under the [APA] are purely legal[] [and] there is no need for factual discovery." Orgs.' Mot. to Intervene Mem. at 12–13. Neither Washtech nor the Government disputes this argument. <u>See generally</u> Washtech's Mot. to Intervene Opp'n; Gov't's Mot. to Intervene Opp'n. "Member participation is not required where a 'suit raises a pure question of law' and neither the claims pursued nor the relief sought require the consideration of the individual circumstances of any aggrieved member of the organization." <u>Ctr. for Sustainable Econ.</u>, 779 F.3d at 597 (quoting <u>Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock</u>, 477 U.S. 274, 287 (1986)). The issue of whether the DHS has legal authority to implement the OPT Program "raises a pure question of law," <u>id.</u>, and litigation of the issue does not require participation by individual members of the Organizations, <u>see</u> <u>id.</u> at 597– 98 (concluding that "[n]either the claims nor the relief require[d] the participation of [the association's] members" where the association's "petition turn[ed] entirely on whether [the Department of the] Interior complied with its statutory obligations"). Accordingly, the Court also concludes that the Organizations satisfy the third prong of the <u>Hunt</u> associational standing test.

Because the Organizations satisfy the three prongs of the <u>Hunt</u> associational standing test, the Court concludes that the Organizations have established Article III standing necessary for intervention in this case.

### 2.      Rule 24 Intervention

Having concluded that the Organizations have established Article III standing, the Court next turns to whether the Organizations have satisfied the four requirements for intervention pursuant to Rule 24.  The Organization seek to intervene as a matter of right pursuant to Rule 24(a), or, in the alternative, permissively pursuant to Rule 24(b).  <u>See</u> Orgs.' Mot. to Intervene at 1.  Washtech and the Government oppose intervention by the Organizations pursuant to Rule 24(a) or (b).  <u>See</u> Washtech's Mot. to Intervene Opp'n at 2, 9; Gov't's Mot. to Intervene Opp'n at 6.  The Court will first address whether the Organizations satisfy the requirements for intervention as a matter of right pursuant to Rule 24(a).

As previously discussed, the District of Columbia Circuit has adopted four factors for the Court to consider when addressing Rule 24(a) motions to intervene.  <u>See</u> <u>Fund for Animals</u>, 322 F.3d at 731.  As to the first factor the Court must consider when assessing a motion to intervene pursuant to Rule 24(a), the Circuit has instructed that

> timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case.

<u>United States v. British Am. Tobacco Austl. Servs., Ltd.</u>, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (quoting <u>United States v. Am. Tel. & Tel. Co.</u>, 642 F.2d 1285, 1295 (D.C. Cir. 1980)).  The Organizations argue that their motion to intervene is timely because in the spring of 2018, while this case was on appeal to the Circuit, the Government "echoed [Washtech's] criticism of the

OPT Program," Orgs.' Mot. to Intervene Mem. at 6, and thus because "[t]he potential inadequacy [of the Government's representation] arose while the case was pending on appeal," "[t]his is [ ] the first time that [the Organizations] have had an opportunity to intervene in this Court following [the Government's] apparent change of heart regarding [the] OPT [Program]," id. at 7. Washtech responds that the Organizations' motion to intervene is untimely because "[c]ounting from the start of this case in 2016, over two years have elapsed[,] [y]et [the Organizations] did not seek leave to intervene" until October 2018. Washtech's Mot. to Intervene Opp'n at 3. The Government, on the other hand, responds that the Organizations' motion is "entirely premature" because the Government recently filed a renewed motion to dismiss, and "if the Court were to grant that motion, the [Organizations'] arguments will become entirely moot." Gov't's Mot. to Intervene Opp'n at 5.

The Court agrees with the Organizations that "the[ir] application to intervene is neither too late nor too early." Orgs.' Mot. to Intervene Reply at 5. As the Circuit has explained,

> [t]he timeliness of a motion to intervene is to be judged in consideration of all of the circumstances. Though the time elapsed since the inception of the suit is relevant, measuring the length of time passed is not in itself the determinative test, because we do not require timeliness for its own sake. Instead, the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties. Thus, even where a would-be intervenor could have intervened sooner, in assessing timeliness a court must weigh whether any delay in seeking intervention unfairly disadvantage[d] the original parties.

Roane v. Leonhart, 741 F.3d 147, 151 (D.C. Cir. 2014) (alteration in original) (citations and internal quotation marks omitted). Here, intervention by the Organizations poses no risk of "unduly disrupting [this] litigation" because the Organizations represent that they "do not intend to make any filings" on the issue of the applicability of the reopening doctrine and only intend to proceed "[i]n the event that the case is not dismissed on statute of limitations grounds." Orgs.'

Mot. to Intervene Mem. at 7.  And, because the Court has denied the Government's renewed

motion to dismiss, the Organizations' motion to intervene is not "premature."  Gov't's Mot. to

Intervene Opp'n at 5.  Moreover, although Washtech is correct that this case commenced over

three years ago, see Compl. at 1, the Government has not yet filed an answer to the Complaint,

see Fund for Animals, 322 F.3d at 735 (concluding that a motion to intervene was timely where

the intervenor moved to intervene "before the defendants filed an answer"); Wildearth Guardians

v. Salazar, 272 F.R.D. 4, 14 (D.D.C. 2010) (finding that the "[p]laintiffs c[ould not] credibly

claim . . . that they would be prejudiced by [ ] intervention at this juncture" where a putative

party moved to intervene "ninety-nine days before the [f]ederal [d]efendants filed an answer");

Am. Forest Res. Council v. Hall, Civ. Action No. 07-0484 (JDB), 2007 WL 1576328, at *1

(D.D.C. May 29, 2007) (concluding that a motion to intervene was timely "because it was filed

before [the] defendants' answer to the complaint, and no briefing schedule ha[d] been entered in

th[e] case").  Accordingly, the Court concludes that the existing parties would not be prejudiced

by the Organizations' intervention in this matter, and therefore, the Organizations' motion to

intervene is timely.

As to the second Rule 24(a) factor, the Court must conclude that "[t]he 'interest' claimed

by the would-be intervenor . . . [is] 'legally protected.'"  United States v. Morten, 730 F. Supp.

2d 11, 16 (D.D.C. 2010) (quoting Karsner v. Lothian, 532 F.3d 876, 885 (D.C. Cir. 2008)).

Here, the Court has already concluded that the Organizations have standing, see Part III.B.1,

supra, and the "conclusion that [the Organizations] ha[ve] constitutional standing is alone

sufficient to establish that [the Organizations] ha[ve] 'a[] [legally protected] interest relating to

the property or transaction which is the subject of the action,'" Fund for Animals, 322 F.3d at

735; see Mova Pharm. Corp., 140 F.3d at 1076 ("[A proposed intervenor] need not show

23

anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a).”); Envtl. Def. v. Leavitt, 329 F. Supp. 2d 55, 66 n.7 (D.D.C. 2004) (noting that “a person who satisfies constitutional standing requirements fulfills [ ] the second of the four Rule 24(a) requirements”).  Accordingly, the Court concludes that the Organizations have a legally protected interest in the subject of this litigation.

As to the third Rule 24(a) factor, “[t]he inquiry into whether a legally[] cognizable interest will be impaired is ‘not a rigid one: consistent with . . . [Rule 24’s] reference to dispositions that may ‘as a practical matter’ impair the [applicants’] interests, courts look to the ‘practical consequences’ of denying intervention[.]”  W. Org. of Res. Councils v. Jewell, Civ. Action No. 14-1993 (RBW), 2015 WL 13711094, at *5 (D.D.C. July 15, 2015) (Walton, J.) (third, fourth, fifth, and six alterations in original) (quoting Wildearth Guardians, 272 F.R.D. at 13).  The Organizations argue that Washtech’s “success in this lawsuit would directly and obviously impair the [Organizations’] and their members’ interest in employing skilled postgraduates under the OPT [P]rogram” because, “if the [OPT] [P]rogram’s underlying regulations are vacated, the members of the [Organizations] will have to terminate thousands of existing employment relationships and will be prevented from entering into thousands of new ones that would depend on the OPT [P]rogram.”  Orgs.’ Mot. to Intervene Mem. at 10. Washtech responds that the Organizations cannot show impairment because they have not established a legally protected interest in the first place, see Washtech’s Mot. to Intervene Opp’n at 6–8; however, the Government does not dispute that this element is satisfied, see generally Gov’t’s Mot. to Intervene Opp’n.  “An action has the practical consequence of impairing prospective intervenors’ interests when the unsuccessful ‘disposition of the action would result in a substantial change in the status quo with respect to those interests,’ such that ‘the task of

reestablishing the status quo if [plaintiffs] succeed[] . . . will be difficult and burdensome.'" Waterkeeper All., Inc. v. Wheeler, 330 F.R.D. 1, 7 (D.D.C. 2018) (alterations in original) (quoting District of Columbia v. Potomac Elec. Power Co., 826 F. Supp. 2d 227, 234 (D.D.C. 2011)). Having already concluded that the Organizations have a legally protected interest in the OPT Program, see Part III.B.1, supra, the Court also concludes that an order by this Court vacating the OPT Program "would result in a substantial change in the status quo with respect to th[at] interest[]," Waterkeeper All., 330 F.R.D. at 7 (quoting Potomac Elec. Power Co., 826 F. Supp. 3d at 234), and therefore would impair that interest.

Finally, as to the fourth Rule 24(a) factor, "[t]he Supreme Court has held that [the adequate representation] 'requirement of [ ] Rule [24(a)] is satisfied if the applicant shows that representation of [its] interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.'" Fund for Animals, 322 F.3d at 735 (quoting Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972)); see Hardin v. Jackson, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) ("The applicant need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." (quoting Dimond v. District of Columbia, 792 F.2d 179, 192 (D.C. Cir. 1986))). The Organizations argue that "the [Organizations] and the [ ] [G]overnment have distinct interests and objectives with respect to the OPT [P]rogram" because "the [Organizations] wish to defend the OPT [P]rogram both as good policy and as fully consistent with the statutory text, [whereas the] DHS has already committed to reconsidering the program, ostensibly to improve protections of [United States] workers at the expense of skilled recent foreign graduates." Orgs.' Mot. to Intervene Mem. at 13–14 (citation and internal quotation marks omitted). Washtech responds that the Government's representation is not inadequate because "the interests of [the Organizations] and

[the Government] are directly aligned[] [given that] both argue that the 2016 OPT [Program] Rule is within [the] DHS's authority," Washtech's Mot. to Intervene Opp'n at 9, and the Government responds that "the 2018 Regulatory Agendas' language of potentially reconsidering [the] OPT [Program] through rulemaking . . . does not mean that the Government no longer wishes to defend itself when it is sued in court," Gov't's Mot. to Intervene Opp'n at 5.  However, "it is well-established that governmental entities generally cannot represent the 'more narrow and parochial financial interest' of a private party," <u>Wildearth Guardians</u>, 272 F.R.D. at 15 (quoting <u>Fund for Animals</u>, 322 F.3d at 737), and therefore, the Court is satisfied that the Organizations have made the requisite minimal showing that the Government may not adequately represent the Organizations' interests, <u>see</u> <u>Alaska Wilderness League v. Jewell</u>, 99 F. Supp. 3d 112, 122 (D.D.C. 2015) (finding that a trade "[a]ssociation's interests in the case [we]re sufficiently different from those of the government so that the government's representation might be inadequate"); <u>Hardin</u>, 600 F. Supp. 2d at 16 ("The [District of Columbia] Circuit has repeatedly held that private companies can intervene on the side of the government, even if some of their interests converge.").  The Court therefore concludes that the Organizations have satisfied the requirements for intervention as a matter of right pursuant to Rule 24(a).[3]

Accordingly, because the Organizations have satisfied the requirements for Article III standing and Rule 24(a) intervention as of right, the Court will grant the Organizations' motion to intervene.[4]

---

[3] Because the Court concludes that the Organizations have satisfied the requirements for intervention as a matter of right pursuant to Rule 24(a), it need not consider the Organizations' alternative argument for permissive intervention pursuant to Rule 24(b).

[4] Washtech and the Government also argue that the Organizations' motion to intervene should be denied because the Organizations did not include with their motion a copy of their proposed answer to the Complaint in accordance with Federal Rule of Civil Procedure 24(c).  <u>See</u> Washtech's Mot. to Intervene Opp'n at 9; Gov't's Mot. to Intervene Opp'n at 2–3.

(continued . . . )

# IV.    CONCLUSION

For the foregoing reasons, the Court denies the Government's renewed motion to dismiss

and grants the Organizations' motion to intervene.[5]

**SO ORDERED** this 1st day of July, 2019.

REGGIE B. WALTON
United States District Judge

---

(. . . continued)

> [A]lthough the Federal Rules require that any motion to intervene be accompanied by a pleading that sets out the claim or defense for which intervention is sought[,] the Federal Rules must be construed to secure the just, speedy, and inexpensive determination of every action and proceeding[,] and other courts have observed that [w]here . . . the position of the movant is apparent . . . and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements.

New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv., Civ. Action No. 16-149 (KBJ), 2016 WL 10839560, at *1 (D.D.C. Apr. 29, 2016) (alterations in original) (citations and internal quotation marks omitted). Here, the position of the Organizations is apparent, see Orgs.' Mot. to Intervene at 1 (indicating that the Organizations seek to intervene to "defend[] the legality of the . . . []OPT[] regulation at issue in Count [II] of [Washtech's] [C]omplaint"), and the Court has already concluded that the parties will not be prejudiced by the Organizations' intervention, see Part III.B.2, supra.  Accordingly, the Court concludes that the Organizations' failure to include with their motion to intervene a copy of their proposed answer to the Complaint does not procedurally bar the Organizations from intervening in this matter.  See Spring Constr. Co. v. Harris, 614 F.2d 374, 376–77 (4th Cir. 1980) (allowing a party to intervene despite the fact that its motion to intervene "was not accompanied by a pleading setting forth the claim for which intervention [was] sought" because "[t]he petition and accompanying affidavit filed by [the intervenor] set forth sufficient facts and allegations to apprise [the opposing party] of [the intervenor's] claims and the intervenor's "failure to file an accompanying pleading was rectified when it filed an amended complaint shortly thereafter, and it d[id] not appear that [the opposing party] was prejudiced by such failure").

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.