In the

# United States District Court

for the

# District of Columbia

| | |
|---|---|
| Washington Alliance of Technology Workers; 13401 Bel-Red Rd. #B8 Bellevue, WA 98005 | |
| *Plaintiff,* | |
| *v.* | |
| U.S. Department of Homeland Security, *et al.*; Office of General Counsel Washington, DC 20258 | Civil Action No. 1:16-cv-1170-RBW |
| *Defendants,* | |
| *and* | |
| National Association of Manufacturers, *et al.* | |
| *Intervenor-Defendants.* | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Motion for Summary Judgment ........................................................................................ 1

Introduction ..................................................................................................................... 1

Statement of the Facts ..................................................................................................... 2

Standard of Review .......................................................................................................... 8

Argument ......................................................................................................................... 9

   I. Washtech has standing to bring this action. ........................................................... 9

  II. Alien guestworkers on the Optional Practical Training program do not
      maintain student visa status. ................................................................................. 9

     A. Non-immigrant guestworkers working under the OPT program
        are not students. ................................................................................................ 10

     B. Guestworkers on the OPT program are not pursuing a full course of
        study as required for student visa status ........................................................... 10

     C. Guestworkers on OPT are not attending a school that will report
        termination of attendance as required for student visa status. ........................ 11

     D. The claim that OPT participants conform to student visa status fails at
        *Chevron* Step One ............................................................................................ 11

  III. DHS has no authority to allow aliens to remain in the United States in
       student visa status after graduation because its regulations are required to
       insure non-immigrants leave the country when they do not conform to the
       status under which they were admitted. ................................................................ 12

  IV. The Immigration Reform and Control Act does not confer on DHS the
       authority to permit non-student aliens to engage in employment while in
       student visa status. .............................................................................................. 12

   V. The courts have previously rejected similar agency attempts to circumvent
       the statutory alien employment scheme. ............................................................. 15

  VI. The court's decision will determine whether important decisions of
       immigration policy are to be made by Congress. ................................................. 17

  VII. After setting aside the 2016 OPT Rule, this Court should not permit DHS to
       resurrect a previous rule. .................................................................................... 18

Conclusion ...................................................................................................................... 18

## TABLE OF AUTHORITIES

Case Law:

*ABA v. FTC*, 430 F.3d 457, 469 (2005) .......................................................................... 14

*AFL-CIO v. Chao*, 496 F. Supp. 2d 76 (D.D.C. 2007) ...................................................... 8

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    133 S. Ct. 2247 (2013) ................................................................................................ 15

*Arizona Dream Act Coalition v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014) ..................................................................................... 14

*Bloch v. Powell*, 227 F. Supp. 2d 25 (D.D.C. 2002) ......................................................... 8

*Castro v. AG of the United States*, 671 F.3d 356 (3d Cir. 2012) ..................................... 15

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) ............................................................................................ 8–9, 11

*Ferrans v. Holder*, 612 F.3d 528 (6th Cir. 2010) ............................................................ 15

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) .............................................. 8

*FDA v. Brown & Williamson*, 529 U.S. 120 (2000) ......................................................... 14

*Guevara v. Holder*, 649 F.3d 1086 (9th Cir. 2011) .................................................... 14, 15

*Indus. Union Dep't, AFL-CIO v. API*, 448 U.S. 607 (1980) ............................................. 17

*Int'l Longshoremen's & Warehousemen's Union v. Meese*,
    891 F.2d 1374 (9th Cir. 1989) ..................................................................................... 17

*Int'l Union of Bricklayers & Allied Craftsmen v. Meese*,
    761 F.2d 798 (D.C. Cir. 1985) ..................................................................................... 15

*Int'l Union of Bricklayers & Allied Craftsmen v. Meese*,
    616 F. Supp. 1387 (N.D. Cal. 1985) ....................................................................... 15–16

*Miller v. Christopher*, 96 F.3d 1467 (1996) .................................................................... 13

*Mistretta v. United States*, 488 U.S. 361 (1989) ............................................................. 15

*Motion Picture Ass'n of Am. v. FCC*,
    309 F.3d 796 (D.C. Cir. 2002) .................................................................................... 8–9

*Narenji v. Civiletti*,
    1980 U.S. App. LEXIS 20952 (D.C. Cir. Jan. 31, 1980) ............................................ 10

*Richmond v. Holder*, 714 F.3d 725 (2d Cir. 2013) ....................................................14

*Rivera v. United Masonry*, 948 F.2d 774 (D.C. Cir. 1991) ........................................14

*Small Refiner Lead Phase-Down Task Force v. U.S. Envtl. Prot. Agency*,
    705 F.2d 506 (D.C. Cir. 1983) ...............................................................................18

*Sokoli v. AG*, 499 Fed. App'x. 214 (3d Cir. 2012) ....................................................10

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015).................................................14

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ..................................................8–9

*United States v. Texas*, 136 S. Ct. 2271 (2016).........................................................14

*United States v. Ala.*, 691 F.3d 1269 (11th Cir. 2012) .............................................15

*Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*,
    156 F. Supp. 3d 123 (D.D.C. 2015)..........................................................................5

*Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*,
    249 F. Supp. 3d 524 (D.D.C. 2017)..........................................................................9

*Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*,
    892 F.3d 332 (D.C. Cir. 2018)...............................................................................1–2

*Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*,
    2019 U.S. Dist. LEXIS 109454, 2019 WL 2744720................................................18

*W. Union Tel. Co. v. FCC*, 665 F.2d 1126 (D.C. Cir. 1981) .......................................13

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001) .............................................14

*Yadidi v. INS*, 1993 U.S. App. LEXIS 20855 (9th Cir. Aug. 12, 1993) .....................10

Statutes:

Immigration and Nationality Act of 1952,
    Pub. L. No. 82-414, 66 Stat. 163 ...........................................................................1–2

Pub. L. No. 97-116, 95 Stat. 1611 (1981) .............................................................. 3, 11

Immigration Reform and Control Act of 1986,
    Pub. L. No. 99–603, 100 Stat. 3445.........................................................................13

Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978..................................3

Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999,
    Pub. L. No. 105-277, 112 Stat. 2681 (1998)......................................................5, 17

American Competitiveness in the Twenty-first Century Act of 2000,
Pub. L. No. 106-313, 114 Stat. 1251 .................................................................. 5, 17

Consolidated Appropriations Act, 2005,
Pub. L. No. 108-447, 118 Stat. 2809 (2004) ..................................................... 5, 17

5 U.S.C. § 706(2)

5 U.S.C. § 706(2)(C) ......................................................................................... 11, 12

8 U.S.C. § 1101(a)(15) ............................................................................................ 2

8 U.S.C. § 1101(a)(15)(A)(i).

8 U.S.C. § 1101(a)(15)(F)(i) .................................................................. 1, 9–11, 16

8 U.S.C. § 1101(a)(15)(H)(i)(b) ......................................................................... 3, 16

8 U.S.C. § 1182(n) ............................................................................................... 16

8 U.S.C. § 1184(a)(1) ........................................................................................... 12

8 U.S.C. § 1184(i) ......................................................................................... 3, 5, 16

8 U.S.C. § 1184(g).......................................................................................... 3–5, 16

8 U.S.C. § 1157 ...................................................................................................... 1

8 U.S.C. § 1227(a)(1)(C)(i) ............................................................................ 4 , 11

8 U.S.C. § 1324a(h)(3) ................................................................................. 7, 12–15

Regulations:

Nonimmigrant Students; Authorization of Employment for
Practical Training; Petitions for Approval of Schools;
Supporting Documents, 42 Fed. Reg. 26,411 (May 24, 1977)............................... 4

Pre-Completion Interval Training, F-1 Student
Work Authorization, 57 Fed. Reg. 31,954 (July 20, 1992)..................................... 4

Extending Period of Optional Practical Training by 17-Months
for F-1 nonimmigrant Students with STEM (Science,
Technology, Mathematics, and Engineering) Degrees and
Expanding Cap-Gap Relief for All F-1 Students with Pending
H-1B Petitions, 73 Fed. Reg. 18,944 (Apr. 8, 2008).............................. 5–6, 16–17

Employment Authorization for Certain H-4 Dependent Spouses,
80 Fed. Reg. 10,284 (Feb. 25, 2015) .......................................................................................13

Improving and Expanding Training Opportunities for
F-1 Nonimmigrant Students With STEM Degrees and
Cap-Gap Relief for All Eligible F-1 Students,
81 Fed. Reg. 13,040–122 (Mar. 11, 2016) ........................................ 1, 7, 12–13, 15

8 C.F.R. § 214.1(a)(2) ..................................................................................................2

8 C.F.R. § 214.2(f)(5)(i) ............................................................................................ 16

8 C.F.R. § 214.2(f)(5)(vi) ....................................................................................... 1, 12

8 C.F.R. § 214.2(f)(6)(i)(A) ...................................................................................... 10

8 C.F.R. § 214.2(f)(6)(i)(B) ...................................................................................... 10

8 C.F.R. § 214.2(f)(10) ......................................................................................... 1, 12

8 C.F.R. § 214.2(f)(10)(ii)(A)(3) ................................................................ 1, 9–10, 16

8 C.F.R. § 214.2(f)(10)(ii)(C) .............................................................................. 1, 12

8 C.F.R. § 214.2(f)(10)(ii)(E) .............................................................................. 1, 10

8 C.F.R. § 274a.12(b)(6)(iv) ...................................................................................... 4

Other Authorities:

Fed. R. Civ. P. 56 ........................................................................................................1

S. Rep. 82-1137 (1952) ...............................................................................................2

H.R. Rep. 82-1365 (1952) ...........................................................................................2

S. Rep. 96-859 (1980) ........................................................................................3, 9, 11

H.R. Rep. 101-723 (1990) ...........................................................................................3

*An Evaluation of the Pilot Program of Off-Campus Work
Authorization for Foreign Students*, U.S. Dep't of Labor &
Immigration and Naturalization Service, Aug. 10, 1994 .......................................3

Government Accountability Office, *Student and Exchange
Visitor Program: DHS Needs to Assess Risks and Strengthen
Oversight of Foreign Students with Employment Authorization*,
GAO-14-356, Feb. 2014 ........................................................................................ 11

Julia Preston, *Pink Slips at Disney. But First, Training Foreign
Replacements*, New York Times, June 4, 2015 .................................................................4–5

Neil Ruiz & Abby Budiman, *Number of Foreign College Students
Staying and Working in the After Graduation Surges*,
Pew Research Center, May 18, 2018......................................................................... 7–8, 17

Patrick Thibodeau, *Southern California Edison IT workers
'beyond furious' over H-1B replacements*,
ComputerWorld, Feb. 4, 2015 ............................................................................................4–5

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, plaintiff, the Washington Alliance of Technology Workers, Local 37083 of the Communication Workers of America, the AFL-CIO ("Washtech"), moves for summary judgment on Count II of its complaint. Washtech seeks to have this Court hold that the U.S. Department of Homeland Security ("DHS") regulation Improving and Expanding Training Opportunities for F-1 Nonimmigrant Students With STEM Degrees and Cap-Gap Relief for All Eligible F-1 Students, 81 Fed. Reg. 13,040–122 (Mar. 11, 2016) ("2016 OPT Rule") is in excess of agency authority and set it aside pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).

## INTRODUCTION

The subject of this litigation is the Post-Completion Optional Practical Training program ("OPT") that supplies foreign labor to industry by allowing aliens to remain in F-1 student visa status after graduation and engage in employment. 8 C.F.R. § 214.2(f)(10)(ii)(A)(3). The OPT program contains three distinct student visa work authorizations. First, student visa holders with any degree in any field can work for one year after graduation. 8 C.F.R. § 214.2(f)(10). Second, non-student aliens with degrees DHS designates as *STEM* (Science/Technology/ Engineering/Mathematics) may work an additional two years. 8 C.F.R § 214.2(f)(10)(ii)(C). Third, all graduates may have their OPT guestworker status extended from the time an H-1B visa petition is filed on their behalf until a decision is made on the petition or the visa start date (a maximum of six months). 8 C.F.R. § 214.2(f)(5)(vi). When combined, the three work authorizations allow alien guestworkers in Washtech's job market to be employed in student visa status for 36 to 42 months. In addition, the OPT program allows non-students to maintain student visa status while unemployed and looking for work. 8 C.F.R. § 214.2(f)(10)(ii)(E).

This case then presents the questions of (1) whether Congress has authorized DHS to allow aliens to remain in student visa status when they are no longer students and (2) whether Congress has authorized DHS to allow such non-students to work while in student visa status. The D.C. Circuit accurately described the issue in this case as a "perceived disconnect

1

between what the statute permits (admitting nonimmigrant aliens as 'students') and what the regulations do (allowing the same nonimmigrant aliens to remain in the country to work after they are no longer students)." *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 892 F.3d 332, 344 (D.C. Cir. 2018) ("Washtech II").

## STATEMENT OF THE FACTS

*Statutory Framework*

1.  The current immigration system was created in the Immigration and Nationality Act of 1952 ("INA"). Pub. L. No. 82-414, 66 Stat. 163.

2.  The purpose of the INA was "to repeal all immigration and nationality laws and to enact a completely revised immigration and nationality code." S. Rep. 82-1137 at 1 (1952); H.R. Rep. 82-1365 at 5 (1952).

3.  Under the INA, aliens are admitted into the United States as *immigrants*, *non-immigrants*, *or refugees*. 8 U.S.C. §§ 1101(a)(15), 1157.

4.  8 U.S.C. § 1101(a)(15) authorizes DHS to admit non-immigrants in various categories (*e.g.*, diplomats, crewmen, visitors, or journalists).

5.  The common name associated with a non-immigrant visa category is derived from its subsection within § 1101(a)(15). 8 C.F.R. § 214.1(a)(2). For example, the A-1 visa for diplomats is authorized by 8 U.S.C. § 1101(a)(15)(A)(i).

6.  The INA created the F-1 student visa. § 101(a)(15)(F), 66 Stat. at 168 (now codified at 8 U.S.C. § 1101(a)(15)(F)(i)). The F-1 visa provides for the admission of an alien who has a residence in a foreign country that he has no intention of abandoning, who is a *bona fide* student qualified to pursue a full course of study, and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study at an approved academic institution or place of study that has agreed to report the termination of attendance of each nonimmigrant student. 8 U.S.C. § 1101(a)(15)(F)(i).

7.  The most substantial change to the F-1 visa occurred in 1981 when Congress explic-
    itly restricted the required courses of study to those taking place at academic institu-
    tions. Pub. L. No. 97-116, 95 Stat. 1611 (1981).

8.  The purpose of this change was to "specifically limit [F-1 visas] to academic stu-
    dents." S. Rep. 96-859 at 7 (1980) [C-8].

9.  The only time Congress authorized employment on F-1 visas was in a trial program
    created in the Immigration Act of 1990, Pub. L. No. 101-649, § 221, 104 Stat. 4978,
    5027-28. This work program was limited to actual students. *Id.* The House report on
    the Immigration Act of 1990 stated that "to assure compliance with the student visa,
    the alien is required to be in good academic standing." H.R. Rep. 101-723 at 66 (1990)
    [C-5].

10. Congress allowed this work program to expire after the Immigration and Naturaliza-
    tion Service and the Department of Labor determined that it was inconsistent with
    the intent of the student visa. *An Evaluation of the Pilot Program of Off-Campus
    Work Authorization for Foreign Students*, U.S. Dep't of Labor & Immigration and
    Naturalization Service, Aug. 10, 1994, p. 7 [C-9–22].

11. The Immigration Act of 1990 also created the H-1B guestworker visa. § 205, 104 Stat.
    at 5020 (codified at 8 U.S.C. § 1101(a)(15)(H)(i)(b)). The H-1B visa authorizes em-
    ployment to non-immigrants in occupations ("specialty occupations") that normally
    require a college degree. 8 U.S.C. §§ 1101(a)(15)(H)(i)(b)), 1184(i) (defining "spe-
    cialty occupation). The Immigration Act of 1990 imposed annual quotas limiting
    the number of aliens that could be admitted on H-1B visas. § 205, 104 Stat. 5019
    (codified at 8 U.S.C. § 1184(g)).

12. DHS is authorized to set the duration of non-immigrant admission through regula-
    tions, that must "insure that at the expiration of such time or upon failure to maintain

the status under which he was admitted … such alien will depart from the United States." 8 U.S.C. § 1184(a)(1).

13. In addition, § 1227(a)(1)(C)(i) makes aliens deportable when they no longer conform to the status for which they were admitted.

*Regulatory Background*

14. "There is no statute under which employment of nonimmigrant students for practical training is authorized." Nonimmigrant Students; Authorization of Employment for Practical Training; Petitions for Approval of Schools; Supporting Documents, 42 Fed. Reg. 26,411 (May 24, 1977).

15. Nonetheless, DHS and its predecessor (Immigration and Naturalization Service) have authorized aliens to work on student visas over the years through regulation employing the euphemism *practical training* to mean *work* on student visas. *E.g.*, 8 C.F.R. § 274a.12(b)(6)(iv).

16. At issue in this litigation is the Post-Completion Optional Practical Training program ("OPT"). Compl. ¶ 2. The OPT program was created in 1992 in an interim rule made without public notice-and-comment. Pre-Completion Interval Training, F-1 Student Work Authorization, 57 Fed. Reg. 31,954 (July 20, 1992) ("1992 OPT Rule"). Under the 1992 OPT Rule, aliens graduates could remain in the United States for a year after graduation and work while maintaining student visa status even though they were not students. *Id.*

17. It is a common practice for employers to replace their American technology workers with alien guestworkers using the H-1B visa program. *E.g.*, Julia Preston, *Pink Slips at Disney. But First, Training Foreign Replacements*, New York Times, June 4, 2015[1] (describing how Disney replaced American computer programmers with H-1B work-

---

1  Available at https://www.nytimes.com/2015/06/04/us/last-task-after-layoff-at-disney-train-foreign-replacements.html

ers); Patrick Thibodeau, *Southern California Edison IT workers 'beyond furious' over H-1B replacements*, ComputerWorld, Feb. 4, 2015 (describing how Southern California Edison replaced American computer programmers with H-1B workers).[2]

18. Congress imposes limits on the number of H-1B visas to protect American workers, limiting the effect of H-1B visas. 8 U.S.C. § 1184(g).

19. Still, industry demand for foreign labor is so great that the quotas on H-1B are frequently reached. *E.g.*, Extending Period of Optional Practical Training by 17-Months for F-1 nonimmigrant Students with STEM (Science, Technology, Mathematics, and Engineering) Degrees and Expanding Cap-Gap Relief for All F-1 Students with Pending H-1B Petitions, 73 Fed. Reg. 18,944 at 18,946 (Apr. 8, 2008) ("2008 OPT Rule")

20. Between 1998 and 2004, the technology industry was able to persuade Congress to enact three increases in the number of H-1B visas. Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, § 411, 112 Stat. 2681, 2681-642 (1998), American Competitiveness in the Twenty-first Century Act of 2000, Pub. L. No. 106-313, § 102, 114 Stat. 1251, and Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, § 421, 118 Stat. 2809, 3356 (2004).

21. In 2007, with no further expansion in sight, industry turned to DHS to get through regulation what they could not get through Congress. 2008 OPT Rule, A.R. 120–27, 130–34 [C-27–C-29]. In 2007 Microsoft Corp. came up with a scheme to use H-1B visas to circumvent the visa quotas. *Id.* at 120–23 [C-27–C-30].

22. The statutory H-1B program and the regulatory OPT program both apply to the same class of alien labor: college graduates. *Compare* 8 U.S.C. § 1184(i) *with* 8 C.F.R. § 214.2(f)(10)(ii)(A)(3).

---

2  Available at https://www.computerworld.com/article/2879083/it-outsourcing/southern-california-edison-it-workers-beyond-furious-over-h-1b-replacements.html

23. Microsoft's plan was to expand the 12-month OPT work period to 29 months so that it would be long enough to serve as a substitute for an H-1B visa. 2008 OPT Rule, A.R. 120–23 [C-27–C-30].

24. Microsoft presented its plan to the DHS Secretary at a dinner party at the home of the owner of the Washington Nationals. *Id.* at 120–23 [C-27–C-30].

25. From there, DHS worked in secret with industry and academic lobbyists to produce new regulations promulgated without public notice-and-comment. 2008 OPT Rule, A.R. 124–27, 130–34 [C-27–C-39].

26. The first notice the public had that such regulations were being considered was when the 2008 OPT Rule was published without notice and comment. *See* 73 Fed. Reg. at 18,944.

27. The 2008 OPT Rule was specifically designed to circumvent the H-1B quotas, 73 Fed. Reg. 18,946–47, with the goal of creating a "a significant expansion of the available pool of skilled workers." *Id.* at 18,953.

28. It did so by creating two extensions to existing one-year OPT term. *Id.* First the 2008 OPT Rule extended OPT from the time an H-1B petition is filed on behalf of the alien until the start of the fiscal year or rejection of the petition. *Id.* Second, for aliens with degrees in fields DHS designated as *STEM* (science/technology/engineering/mathematics) the regulations created a 17-month extension to the OPT term. *Id.* Combined, these extensions allowed aliens to work in the United States on a student visa for up to 33 months after graduation. In addition, the regulations allowed aliens to be unemployed looking for work after graduation while on student visa status. *Id.* at 18,950.

29. The 2008 OPT Rule was ordered vacated by this Court on August 12, 2015, for failure to give notice and comment. *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 156 F. Supp. 3d 123, 149 (D.D.C. 2015) ("*Washtech* I")

30. After this Court's vacatur order of the 2008 OPT Rule, DHS promulgated new OPT regulations in 2016. 2016 OPT Rule, 81 Fed. Reg. at 13,040 (Mar. 11, 2016) [A-1–A-84]. The 2016 OPT Rule (1) created a new one-year work authorization for all graduates, replacing the one created in the 1992 OPT Rule, *id.* at 13,117 [A-79]; (2) reinstated the OPT extension for aliens with pending H-1B petitions, *id.*; (3) created an expanded OPT extension for aliens with degrees in STEM fields of 24 months, *id*; and (4) reinstated the authorization for aliens to be unemployed and looking for work after graduation on a student visa, *id.* at 13,119 [A-81]. Combined, an alien can work for up to 42 months on a student visa after graduation on the 2016 OPT Rule. The 2016 OPT Rule is effectively the same as the 2008 OPT Rule except that the 17-month STEM exception was increased to 24 months.

31. For the first time in a regulation authorizing employment for aliens in student visa status, DHS claimed that the definition of the term *unauthorized alien* in 8 U.S.C. § 1324a(h)(3) gave it authority to allow aliens to work on student visas. 81 Fed. Reg. at 13,045 [A-7].

32. With its longer work duration, the OPT program has transformed student visas into vehicle for supplying labor to industry. Decl. of Patrick Duffy, Docket 37-3, ¶¶ 13–21; Decl. of Peter Tolsdorf, Docket 37-3, ¶ 4; Decl. of Jonathan Baselise, Docket 37-3, ¶ 3; Decl. of Dean C. Garfield, Docket 37-3, ¶¶ 6–7.

33. Since DHS expanded the duration of OPT to circumvent the H-1B quotas, demand for OPT guestworkers has soared by over 400%, from 78,000 in 2004 to 257,000 in 2016. Neil Ruiz & Abby Budiman, *Number of Foreign College Students Staying and Working in the After Graduation Surges*, Pew Research Center, May 18, 2018, p. 7 [C-26].[3]

---

3  Available at http://assets.pewresearch.org/wp-content/uploads/sites/2/2018/05/10110621/Pew-Research-Center_Foreign-Student-Graduate-Workers-on-OPT_2018.05.10.pdf

34. In recent years the number of initial approvals for OPT (257,000 in 2016) has ex-
ceeded those for H-1B visas (115,000 in 2016). *Id.* [C-26].

## STANDARD OF REVIEW

The courts of this circuit have repeatedly held that cases arising under the Administrative
Procedure Act ("APA") are typically resolved by summary judgment on the basis of the ad-
ministrative record compiled by the agency. *E.g.*, *Bloch v. Powell*, 227 F. Supp. 2d 25, 30–31
(D.D.C. 2002); *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 81–82 (D.D.C. 2007). "The factfinding
capacity of the district court is thus typically unnecessary to judicial review of agency fact-
finding . . . . [C]ourts are to decide, on the basis of the record the agency provides, whether the
action passes muster under the appropriate APA standard of review." *Florida Power & Light
Co. v. Lorion*, 470 U.S. 729, 744 (1985).

A court should "hold unlawful and set aside agency action, findings, and conclusions
found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statu-
tory right." 5 U.S.C. § 706(2)(C). The D.C. Circuit elucidated this standard in *Motion Picture
Ass'n of Am. v. FCC*:

> In *Chevron*, the Court held that, "if the intent of Congress is clear, that is the
> end of the matter; for the court, as well as the agency, must give effect to the un-
> ambiguously expressed intent of Congress." This is so-called '*Chevron* Step One'
> review. If Congress "has not directly addressed the precise question" at issue, and
> the agency has acted pursuant to an express or implicit delegation of authority,
> the agency's interpretation of the statute is entitled to deference so long as it is
> "reasonable" and not otherwise "arbitrary, capricious, or manifestly contrary to
> the statute." This is so-called "*Chevron* Step Two" review. In either situation, the
> agency's interpretation of the statute is not entitled to deference absent a delega-
> tion of authority from Congress to regulate in the areas at issue.
>
> *Mead* reinforces *Chevron's* command that deference to an agency's inter-
> pretation of a statute is due only when the agency acts pursuant to "delegated au-
> thority." The Court in *Mead* also makes it clear that, even if an agency has acted
> within its delegated authority, no *Chevron* deference is due unless the agency's
> action has the "force of law."

309 F.3d 796, 801 (D.C. Cir. 2002) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and *United States v. Mead Corp.*, 533 U.S. 218 (2001)).

## ARGUMENT

### I. Washtech has standing to bring this action.

Washtech alleged increased competition injury from alien guestworkers on OPT. Comp. ¶¶ 98–210. DHS made a factual challenge to standing in its reply to its first motion to dismiss and submitted Washtech's standing evidence from *Washtech* I. Exhibits, Docket 21-2, 21-3, and 21-4. This Court held that Washtech had standing to bring this action. *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.,* 249 F. Supp. 3d 524, 555 (D.D.C. 2017). The D.C. Circuit examined the facts on and off the record and affirmed that Washtech had standing. *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 892 F.3d 332, 339–42 (D.C. Cir. 2018). Washtech submits updated standing evidence in its Appendix B containing facts that support the allegations made related to standing in the Complaint as well as affidavits of its members.

### II. Alien guestworkers on the Optional Practical Training program do not maintain student visa status.

Congress defined student visa status in 8 U.S.C. § 1101(a)(15)(F)(i). Student visa status requires the alien to be a *bona fide* student, solely pursuing a course of study at an approved academic institution that will report termination of attendance. *Id.* In contrast, the OPT program allows aliens to remain in student visa status after they have graduated and are no longer students. 8 C.F.R. § 214.2(f)(10)(ii)(A)(3).

### A. Non-immigrant guestworkers working under the OPT program are not students.

The obvious problem with the OPT program is that its participants are not students, let alone "*bona fide* students" as required by statute for student visa status. 8 U.S.C. § 1101(a)(15)(F)(i); *see* S. Rep. 96-859 at 7 (1980) [C-8] (stating that the purpose of Pub. L. No. 97-116, 95 Stat. 1611 (1981) was to "specifically limit [F-1 visas] to academic students."). When aliens stop

attending school, they no longer maintain student visa status. *Narenji v. Civiletti*, 1980 U.S. App. LEXIS 20952 (D.C. Cir. Jan. 31, 1980) (MacKinnon, J. concurring, denying rehearing *en banc* of 617 F.2d 745 (D.C. Cir. 1979)) ("[H]aving ceased to be valid students, . . . the basis upon which they were allowed to enter this country has ceased to exist and they are required to return home."); *Sokoli v. AG*, 499 Fed. App'x. 214, 215–16 (3d Cir. 2012) (holding that alien failed to maintain student visa status by not departing the country after graduation); *Yadidi v. INS*, 1993 U.S. App. LEXIS 20855, 2–3 (9th Cir. Aug. 12, 1993) (holding that graduation from high school ended F-1 status).

### B. Guestworkers on the OPT program are not pursuing a full course of study as required for student visa status.

F-1 student visa status requires that the alien be solely pursuing a full course of study. 8 U.S.C. § 1101(a)(15)(F)(i). At the college level, a *full course of study* means either "study at a college or university" as a graduate student or the receipt of "at least twelve semester or quarter hours of instruction per academic term" as an undergraduate. 8 C.F.R. §§ 214.2(f)(6)(i)(A) & (B). However, DHS regulations state that OPT takes place "[a]fter completion of the course of study." 8 C.F.R. § 214.2(f)(10)(ii)(A)(3). Therefore, alien guestworkers on OPT, by definition, are not pursuing a course of study, let alone "solely" pursuing a full course of study, because they are not attending school at all. *See* 8 U.S.C. § 1101(a)(15)(F)(i). OPT participants have graduated and are working in industry or are unemployed. 8 C.F.R. §§ (f)(10)(ii)(A)(3) & (E). As such, alien guestworkers on the OPT program do not meet the statutory requirements for maintaining student visas status that the alien be solely pursing a course of study. 8 U.S.C. § 1101(a)(15)(F)(i).

### C. Guestworkers on OPT are not attending a school that will report termination of attendance as required for student visa status.

F-1 student visa status requires the aliens to be pursing their course of study at an approved academic institution that will report termination of attendance. 8 U.S.C. § 1101(a)(15)(F)(i). In 1981 Congress made a significant change to the definition of F-1 visa status by explicitly

limiting it to study at academic institution. Pub. L. No. 97-116, 95 Stat. 1611 (1981). The purpose of this change was to "specifically limit [F-1 visas] to academic students." S. Rep. 96-859 at 7 (1980) [C-8]. But guestworkers under the OPT program are not enrolled in school. 8 C.F.R. § 214.2(f)(10)(ii)(A)(3). DHS does not even have the ability to ensure aliens on OPT are actually "working in jobs related to their studies." Government Accountability Office, *Student and Exchange Visitor Program: DHS Needs to Assess Risks and Strengthen Oversight of Foreign Students with Employment Authorization*, GAO-14-356, Feb. 2014[4] [C-2]. Under OPT, aliens are turned loose in the job market with no supervision from any school. For this reason, too, alien guestworkers in the OPT program are not pursuing a full course at an approved academic institution that will report termination of attendance as required to maintain F-1 student visa status. 8 U.S.C. § 1101(a)(15)(F)(i).

### D. The claim that OPT participants conform to student visa status fails at *Chevron* Step One.

As shown in the previous sections, alien guestworkers in the OPT program do not conform to the requirements for student visa status in 8 U.S.C. § 1101(a)(15)(F)(i). Furthermore, the definition of student visa status uses the qualifier "solely" to exclude all other activities, including OPT, as qualifying an alien for student visa status. *Id.* Therefore, any claim that guestworkers participating in the OPT program are maintaining student visa status fails at *Chevron* Step One; unambiguously, Congress has not authorized OPT, and indeed has set clear limits on student visa eligibility that OPT transgresses. *See Chevron* 467 U.S. at 843. Therefore, this Court must set aside the OPT program as contrary to law and in excess of DHS authority. 5 U.S.C. § 706(2)(C).

---

4  Available at https://www.gao.gov/products/GAO-14-356

### III. DHS has no authority to allow aliens to remain in the United States in student visa status after graduation because its regulations are required to insure non-immigrants leave the country when they do not conform to the status under which they were admitted.

Congress has directly addressed the question of whether non-immigrant aliens admitted on student visas may remain in the United States when they no longer conform to student visa status. The Secretary of Homeland Security may define through regulation the duration of non-immigrant admission. 8 U.S.C. § 1184(a)(1). However, such regulations must "insure that ... upon failure to maintain the status under which he was admitted ... such alien will depart from the United States" unless the alien has changed status to another visa classification under the INA. *Id.*; 8 U.S.C. § 1227(a)(1)(C)(i) (making non-immigrant aliens deportable if they do not maintain the status for which they were admitted). Yet DHS regulations do not insure that foreign students leave the country after they graduate and no longer conform to their statutory student visa status. 8 U.S.C. § 1184(a)(1). Instead, the OPT program permits former students to remain in the United States for up to 42 months to provide labor to industry. 8 C.F.R. §§ 214.2(f)(10), 214.2(f)(10)(ii)(C), 214.2(f)(5)(vi). By failing to follow the explicit statutory requirements of 8 U.S.C. § 1184(a)(1) that non-immigrant aliens must leave the country when they do not conform to the status under which they were admitted, the 2016 OPT Rule does not survive a *Chevron* Step One analysis. *See Chevron*, 467 U.S. at 843. Therefore court must set aside the OPT program as contrary to law and in excess of DHS authority. 5 U.S.C. § 706(2)(C).

### IV. The Immigration Reform and Control Act does not confer on DHS the authority to permit non-student aliens to engage in employment while in student visa status.

Even if one makes that wild assumption that Congress has somehow conferred on DHS the authority to allow aliens to maintain student visas status when they are no longer students, the 2016 OPT Rule faces the insurmountable problem that Congress has not authorized DHS to permit such non-students to engage in employment. The 2016 OPT Rule claims 8 U.S.C. § 1324a(h)(3) as its source of authority to permit non-students to engage in employment in

student visa status. 81 Fed. Reg. at 13045, 13,059. That provision was enacted in the Immigration Reform and Control Act of 1986 ("IRCA"), Pub. L. No. 99–603, § 101, 100 Stat. 3445 (creating the new section § 274a of the INA codified at 8 U.S.C. § 1324a) that, for the first time, criminalized and imposed civil sanctions on the act of hiring an alien who is not authorized to work in the United States. Section 1324a(h)(3) defines those aliens that it is unlawful for employer to hire:

> (3) Definition of unauthorized alien
> As used in this section, the term "unauthorized alien" means, with respect to the employment of an alien at a particular time, that the alien is not at that time either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this chapter or by the Attorney General.

The plain language of § 1324a(h)(3) confers no authority whatsoever on DHS. This provision is expressly limited in scope to, "as used in this section." *See W. Union Tel. Co. v. FCC*, 665 F.2d 1126, 1136–37 (D.C. Cir. 1981) (holding a section was "only definitional" where it began with "as used in this section" and contained only definition subsections). Yet DHS claims that this provision permits the agency to authorize aliens to remain in student visa status after they have graduated and are no longer students; to allow such non-student aliens to engage in employment; and to allow such non-students aliens to be unemployed and looking for work. 81 Fed. Reg. at 13,045, 13,059, 13,117–21. It is notable that no regulation prior to 2015 ever claimed that 8 U.S.C. § 1324a(h)(3) conferred on DHS authority to define classes of aliens eligible for employment. Employment Authorization for Certain H-4 Dependent Spouses, 80 Fed. Reg. 10,284, 10,294 (Feb. 25, 2015)

Congress has the "plenary authority to prescribe rules for the admission and exclusion of aliens." *Miller v. Christopher*, 96 F.3d 1467, 1470 (1996). To find that Congress has conferred on DHS power equal to its own to grant alien employment in a term definition, limited in scope to its own, the court "would have to conclude that Congress not only had hidden a rather large elephant in a rather obscure mousehole, but had buried the ambiguity in which the pachyderm lurks beneath an incredibly deep mound of specificity, none of which bears

the footprints of the beast or any indication that Congress even suspected its presence." *ABA v. FTC*, 430 F.3d 457, 469 (2005). If Congress had intended to grant DHS co-equal power to authorize alien employment through regulation, surely it would have done so explicitly. *Cf. FDA v. Brown & Williamson*, 529 U.S. 120, 160 (2000) ("[W]e are confident that Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion").

The only opinion to address outside of dicta whether 8 U.S.C. § 1324a(h)(3) confers on DHS the vast authority it claims to allow aliens to remain in the United State and to be employed is *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) (*aff'd by an equally divided Court*, *United States v. Texas*, 136 S. Ct. 2271 (2016)). The Fifth Circuit rejected the government's claim that § 1324a(h)(3) conferred on the executive branch authority to allow aliens to work in the context of the Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA) program. *Id.* at 182–83 & n.185. The Fifth Circuit observed that § 1324a(h)(3) is a "'miscellaneous' definitional provision expressly limited to § 1324a, a section concerning the 'Unlawful employment of aliens,'" "does not mention lawful presence," and that "Congress ... does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Id.* at 183 & n.186 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)); *accord Guevara v. Holder*, 649 F.3d 1086, 1095 (9th Cir. 2011) (holding that there was "nothing in the statute [8 U.S.C. § 1324a] or administrative regulation to provide for more" than "merely allow[ing] an employer to legally hire an alien (whether admitted or not) while his [adjustment of status] application is pending."); *but see Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1062 (9th Cir. 2014) (suggesting 1324a(h)(3) permitted DHS to authorize alien employment in the Deferred Action for Childhood Arrivals program). Nonetheless, the prevailing view of the courts is that the purpose of § 1324a is to restrict alien employment; not to grant DHS unfettered power to authorize aliens to work through regulation. *E.g., Rivera v. United Masonry*, 948 F.2d 774, 776 (D.C. Cir. 1991); *Richmond v. Holder*, 714 F.3d 725, 728 n.1 (2d Cir. 2013);

*Castro v. AG of the United States*, 671 F.3d 356, 369 n.9 (3d Cir. 2012); *Ferrans v. Holder*, 612 F.3d 528, 532 (6th Cir. 2010); *United States v. Ala.*, 691 F.3d 1269, 1289 (11th Cir. 2012).

Indeed, any interpretation of § 1324a(h)(3) that is broad enough to permit OPT's work authorizations makes that provision a glaring violation of the nondelegation doctrine. That doctrine requires "an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). No principle governing the grant of work authorizations by the Attorney General or his successor DHS can be discerned in § 1324a(h)(3); rather, as DHS appears to acknowledge, if § 1324a(h)(3) gives DHS the authority to authorize work for aliens in the OPT program, that is because it gives DHS general authority to authorize work for any alien, or class of aliens, as it sees fit. *See, e.g.*, 80 Fed. Reg. at 10,294 ("8 U.S.C. 1324a(h)(3)(B), recognizes that employment may be authorized by statute or by the Secretary"). Such an interpretation makes § 1324a(h)(3) unconstitutional, and for that reason should be avoided. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 133 S. Ct. 2247, 2258–59 (2013).

Furthermore, having permission to work in the United States does not confer lawful status for an alien to be in the United States. *Guevara*, 649 F.3d at 1091–92. Even if the mousehole of 8 U.S.C. § 1324a(h)(3) confers on DHS unlimited authority to grant aliens employment in the United States, the 2016 OPT Rule still identifies no provision granting DHS the authority to allow aliens to remain in the United State under student visa status when they are no longer students. *See* § III, *supra*.

### V. The courts have previously rejected similar agency attempts to circumvent the statutory alien employment scheme.

Agency actions have repeatedly attempted to thwart the statutory alien employment scheme through the use of administrative action. In *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, the Immigration and Nationalization Service was admitting Italian and German bricklayers into the United Status on B temporary visitor visas. 761 F.2d 798, 800 (D.C. Cir. 1985). After that appeal, the district court observed, "an alien coming to the United States for

the purpose of 'performing skilled or unskilled labor' is expressly excluded from the 'temporary visitor for business' class." *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 616 F. Supp. 1387, 1398 (N.D. Cal. 1985)  ("*Bricklayers*"). Similarly here, the F-1 student visa is expressly limited to *bona fide* students solely pursuing a course of study at an approved academic instruction that will report termination of attendance; all other activities are expressly excluded. 8 U.S.C. § 1101(a)(15)(F)(i).

The district court in *Bricklayers* not only examined the lawfulness of the admission of foreign labor from the perspective of the visa being used, but also considered the provisions of the visa that should have been used for the type of labor at issue. 616 F. Supp. at 1399. Congress had established the H-2 visa for "Temporary Workers" and the district court held that admitting such aliens on B visas "contravenes" the provisions of the H-2 that should have been used for such labor. *Id.* Likewise here, Congress established the H-1B visa to admit college-educated labor. 8 U.S.C. §§ 1101(a)(15)(H)(i)(B), 1184(i). As college graduates, aliens working on OPT would be eligible for H-1B visas. *Id.*, 8 C.F.R. § 214.2(f)(5)(i), (10)(ii)(A)(3). For an alien to get an H-1B visa, however, an employer must comply with the Labor Condition Application requirements of 8 U.S.C. § 1182(n), and the visa petition is subject to the annual quotas of 8 U.S.C. § 1182(g). Here, the motivation for expanding the OPT term beyond a year was to circumvent the annual quotas on H-1B visas. 73 Fed. Reg. at 18,946 (stating that the quotas on H-1B workers Congress put in place to protect American worker "creates a competitive disadvantage for U.S. companies."); 2008 OPT Rule, A.R. 120–21 [A-94–A-95] (Letter from Microsoft's Managing Director of Federal Government Affairs to the DHS Secretary calling for the duration of OPT be expanded to circumvent the H-1B visa quotas). Under the reasoning of the court in *Bricklayers*, the OPT regulations thus violate both the terms of the F-1 visa (8 U.S.C. § 1101(a)(15)(F)(i)) being used to admit the foreign labor and the provisions of the H-1B visa (8 U.S.C. §§ 1101(a)(15)(h)(i)(B), 1182(n), 1184(g)) that should be used to admit such labor. 616 F. Supp. at 1398–99.

Another analogous situation occurred in *Int'l Longshoremen's & Warehousemen's Union v. Meese,* where the INS had been admitting crane operators into the United States under D crewman visas rather than H-2 visas. 891 F.2d 1374, 1380 (9th Cir. 1989). The Ninth Circuit held that this practice was in excess of agency authority. *Id.* at 1384.

## VI. The court's decision will determine whether important decisions of immigration policy are to be made by Congress.

Between 1998 and 2004, Congress made three enactments that, combined, doubled the amount of college educated foreign labor that is allowed to compete in Washtech's market through the H-1B visa program. Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, 112 Stat. 2681 (1998); American Competitiveness in the Twenty-first Century Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251; Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, 118 Stat. 2809 (2004). Since then, Congress has refused to give industry any more similar increases. Yet, without Congressional action, the amount of such labor has more than doubled again as DHS has created guestworker programs through regulation. Ruiz & Budiman, at 3. The duration of OPT was extended beyond a year for very purpose of circumventing the H-1B quotas. 73 Fed. Reg. at 18,946–51, 53. Indeed, on a yearly basis, the OPT program is now larger than the H-1B program. Ruiz & Budiman, at 7. Important choices of social policy are supposed to be made by Congress, "the branch of our Government most responsive to the popular will." *Indus. Union Dep't, AFL-CIO v. API*, 448 U.S. 607, 685 (1980) (Rehnquist, J. concurring). Yet the OPT program was transformed into a guestworker program as a result of a dinner held at the home of a billionaire followed by secret agency action where only lobbyists were invited to participate. 2008 OPT Rule; A.R. 120–23 [C-27–C-39]. The court should put an end to this system of guestworker programs being created by regulation and reserve that function to Congress. Otherwise, ordinary working Americans will be cut out of the process.

## VII. After setting aside the 2016 OPT Rule, this Court should
## not permit DHS to resurrect a previous rule.

This Court held that the 2016 OPT Rule reopened the OPT program as a whole to challenge. *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 2019 U.S. Dist. LEXIS 109454, *22, 2019 WL 2744720. Because the 2016 OPT Rule replaced all the previous OPT previsions, reopening does not invoke any other regulatory provisions. 81 Fed. Reg. at 13,117–22. Reopening, however, raise the question of what should occur after vacating the 2016 OPT Rule.

"When an agency replaces an existing rule with a new rule, and [the D.C. Circuit vacates] all or part of the new rule, [the court] must decide whether the prior rule continues in effect or whether [its] action leaves no rule in effect." *Small Refiner Lead Phase-Down Task Force v. U.S. Envtl. Prot. Agency*, 705 F.2d 506, 545 (D.C. Cir. 1983). And "the better course is generally to vacate the new rule without reinstating the old rule." *Id.* Here, the question of whether authorizing non-students to work under the 2016 OPT Rule is within DHS authority is absolutely identical to whether non-students could work under previous OPT rules because the only relevant difference among the rules is the duration of non-student work. If this Court finds that the OPT program is unlawful under the 2016 OPT Rule, this Court should not reinstate any prior rule authorizing non-student employment on student visas. *See Small Refiner*, 705 F.2d at 545.

## CONCLUSION

Because aliens on OPT are not pursuing a course of study at an academic institution that will report termination of attendance, because there is no statute that authorizes employment on F-1 visas, and because no statute authorizes aliens to remain in student visa status after they have graduated and are no longer attending school, the OPT program is contrary to law and in excess of DHS authority under *Chevron* Step One. Therefore the 2016 OPT Rule must be set aside pursuant to the Administrative Procedure Act. 5 U.S.C. § 706(2).

Respectfully submitted,
Dated: September 25, 2019

John M. Miano
D.C. Bar No. 1003068
Attorney of Record for
Washington Alliance of
Technology Workers
(908) 273-9207
miano@colosseumbuilders.com

Christopher Hajec
Immigration Reform Law Institute
25 Massachusetts Ave., N.W.
Suite 335
Washington, D.C. 20001
(202) 232-5590