# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON ALLIANCE OF TECHNOLOGY WORKERS, </br></br>Plaintiff, </br></br>v. </br></br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.,* </br></br>Defendants, </br></br>and </br></br>NATIONAL ASSOCIATION OF MANUFACTURERS, *et al.,* </br></br>Intervenor-Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Civil Action No. 16-1170 (RBW) |

### ***BRIEF AMICUS CURIAE* OF NISKANEN CENTER IN SUPPORT OF INTERVENOR-DEFENDANTS**

# TABLE OF CONTENTS

TABLE OF AUTHORITES .................................................................................................. ii

DISCLOSURE ..................................................................................................................... iii

STATEMENT OF INTEREST ............................................................................................ iv

ARGUMENT ......................................................................................................................... 1

    I.    The OPT Program Does Not Injure Native Workers ..................................................... 1

        A.    The OPT Program Does Not Increase Competition with Foreign Workers ..................... 1

        B.    Evidence Shows OPT Workers Do Not Have an Unfair Competitive Advantage Over Native Workers ................................................................................................................ 3

    II.    The OPT Program Does Not Deprive Members of Statutory Labor Protections ............. 5

    III.    The OPT Program Provides Significant Economic Benefits By Driving Innovation and Growth .................................................................................................................... 7

        A.    OPT Program Helps Coordinate the Recruitment and the Retention functions of F-1 and H-1B visa programs ........................................................................................................ 7

        B.    OPT Increases Human Capital and Innovation .............................................................. 9

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITES

**CASES**

*Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 202 F. Supp. 3d 20 (D.D.C. 2016) ................................................................................................................. 1

*Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.,* 74 F. Supp. 3d 247 (D.D.C. 2014) ................................................................................................................. 7

**OTHER AUTHORITIES**

*Bureau of Labor Statistics, STEM crisis or STEM surplus? Yes and yes,* (2015) https://bit.ly/2iiJ5eg ................................................................................................... 10

Congressional Budget Office, *Effective Tax Rates,* (December 2007), https://bit.ly/2BE15GS ................................................................................................ 4

Exec. Office of the Pres., President's Council of Advisors on Science and Technology, *Engage to Excel: Producing One Million Additional College Graduates With Degrees in Science, Technology, Engineering, and Mathematics*, (February 2012), https://bit.ly/2kCNd7p ............................................................................................... 10

Jeremy L. Neufeld, *Optional Practical Training (OPT) and International Students After Graduation*, Niskanen Center (March 2019), https://bit.ly/2Jle4Sd ................... passim

Madeline Zavodny, *International Students, STEM OPT and the U.S. STEM Workforce, National Foundation for American Policy*, (March 2019), https://bit.ly/2EVv7Zj ............ 2

*Tracking International Students in Higher Education: A Progress Report Hearing Before the Subcomm. On 21st Century Competitiveness and the Subcomm. On Select Educ. of the U.S. House of Representatives Comm. on Educ. and the Workforce,* 109th Cong. 109-5 (2005) https://bit.ly/31JWrSg ................................................................................................... 8

**REGULATIONS**

8 CFR § 214 and 274a (2008) .................................................................................... 7, 8

## DISCLOSURE

The Niskanen Center is a 501(c)(3) nonprofit advocacy-based organization, with no parent corporation and no publicly traded stock.

## STATEMENT OF INTEREST

The Niskanen Center ("Niskanen") is a nonpartisan 501(c)(3) think tank that works to promote an open society: a social order that is open to political, cultural, and social change; open to free inquiry; open to individual autonomy; open to the poor and marginalized; open to commerce and trade; open to people who may wish to come or go; open to different beliefs and cultures; open to the search for truth; and a government that protects these freedoms while advancing the cause of open societies around the world.

Niskanen therefore strongly believes that immigration channels that open doors to the best and the brightest are programs we should defend. Our original research on Optional Practical Training Program ("OPT") suggests that it positively contributes to the open society and the social and economic well-being of the United States.

In 2017, the Niskanen Center obtained data from the Student Exchange Visitor Information System (SEVIS) on over 1.7 million OPT participants through a Freedom of Information (FOIA) request. Niskanen analyzed this data, in conjunction with geographic data on economic and demographic variables obtained from the Local Area Unemployment Statistics Program, the American Community Survey, and the U.S. Patent and Trademark Office to determine the economic effects of the OPT program on native workers, on innovation, wages, and to report on the scale and growth of the program, educational attainment of participants, and their fields of study. Jeremy L. Neufeld, *Optional Practical Training (OPT) and International Students After Graduation*,

Niskanen Center (March 2019), https://bit.ly/2QSsnSH (hereinafter "Neufeld Study"). Aspects of our analysis are included below; we believe this information is relevant to this case.

# ARGUMENT

## I. The OPT Program Does Not Injure Native Workers

### A. *The OPT Program Does Not Increase Competition with Foreign Workers*

The plaintiff alleges that OPT has injured its members by "allow[ing] increased competition with foreign workers;" that "the OPT program allows additional foreign workers to compete with Washtech members that would not be in the job market but for DHS regulations;" and that "the competition to Washtech and its members created by OPT is present and visible in the job market." Complaint at 86, 98, & 99 (ECF No. 1); *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.,* 202 F. Supp. 3d 20 (D.D.C. 2016).

Even if the plaintiff were entitled to protection from increased competition, the evidence does not show that OPT does in fact increase competition. Neufeld Study at 5-6. Using the geographic variation of OPT participants in the labor market, and exploiting a natural experiment afforded by the promulgation of the STEM extension, our study found that OPT workers do *not* compete with highly educated natives and that increased competition is *not* visible in the job market.

There are more workers, yes, but there are also no deleterious effects on natives from the presence of foreign workers. The study finds that natives are no more likely to be unemployed, no more likely to see reduced wages, and no less likely to participate in the labor force. On the contrary, it finds they tend to complement natives with

1

educational attainment similar to Washtech workers—at both the bachelor's and graduate level—and increases their earnings. Neufeld Study at 6.

Niskanen's findings are buttressed by a study by the National Foundation for American Policy, which likewise found a *negative* association between the scale of OPT and unemployment. Madeline Zavodny, *International Students, STEM OPT and the U.S. STEM Workforce, National Foundation for American Policy*, (March 2019), https://bit.ly/2EVv7Zj (hereinafter "Zavodny Study"). The study further found this negative association holds when looking at STEM fields specifically, including math and computer science.

To quote the study, "there is no evidence that foreign students participating in the OPT program reduce job opportunities for U.S. workers. Instead, the evidence suggests that U.S. employers are more likely to turn to foreign student workers when U.S. workers are scarcer." Zavodny Study at 1.

These findings are not surprising when we remember that whether new high-skilled workers increase competition cannot be known a priori because claims about new workers "competing" with natives are essentially claims about whether those workers are *substitutes* for natives. Substitution is *less* likely in the face of shortages, as exist in the STEM fields. And complementarity is *more* likely in high-skilled areas, which feature high degrees of specialization, work in teams, agglomeration effects, and spillover effects from innovation. Neufeld Study at 5-6.

It is just as consistent to believe high-skilled workers will *complement* natives as will *substitute* for them. It may be theoretically possible that an alien replaces some native, but it is also theoretically possible that an alien complements that native, making them more productive. The empirical results from Neufeld Study and Zavodny Study indicate that in the case of OPT, the latter is case.

### B. Evidence Shows OPT Workers Do Not Have an Unfair Competitive Advantage Over Native Workers

#### 1. FICA and Medicare Exemptions Does Not Create Unfair Competition

The plaintiff points to the fact that "aliens on F-1 visas are classified as Non-Resident Aliens so that they and their employers do not pay Medicare and Social Security taxes as is required for members" and that "this taxation treatment makes workers on OPT inherently cheaper to employ than Washtech members." Complaint at 220, 221. The plaintiff alleges that non-residents' exemption from FICA and Medicare tax requirements amounts to "unfair competition." Complaint at 87. And, that this "unfair competition from alien guestworkers [sic]" leads to an "inability to compete on equal footing." Complaint at 87.

While employers nominally "contribute" to the employer side payroll tax, this contribution comes out of gross compensation, meaning the cost is passed on to the employees as lower earnings. The burden of the payroll tax is on the employee and does not affect gross compensation, and hence does not put natives at a disadvantage. The Congressional Budget Office ("CBO") relies on this in its analyses: "CBO also assumes,

3

as do most economists, that the employers share of payroll taxes is passed on to employees in the form of lower wages than would otherwise be paid. Therefore, the amount of those taxes is included in employee's income, and the taxes are counted as part of employees tax burden." Congressional Budget Office, *Effective Tax Rates,* (December 2007), https://bit.ly/2BE15GS.

OPT simultaneously places severe disadvantages on OPT workers. OPT features uncertainty, limited duration, costs and risks to retain workers. In any case, Niskanen's research indicates that OPT workers do not have a competitive edge and that the market is not characterized by competition. Neufeld Study at 6.

### 2. Mentoring Programs Limit Employment Opportunities for OPT Workers and do Not Discriminate Against Natives

The plaintiff alleges that "the 2016 OPT Rule requires employers and universities to provide foreign workers under the OPT program mentoring programs without requiring such programs be made available to Washtech members and other American workers" Complaint at 224, 225.

This allegation seriously misunderstands the nature of the training programs and undermines the plaintiff's earlier claims of unfair competition. The rule does not require any employer to provide services to one group of people but not to another, rather it is a requirement limiting jobs that may be offered to OPT recipients in the first place.

Any native worker is free to bargain for mentoring before he accepts an employment contract but an OPT participant is not free to do so. This means the

requirement does not afford *more* opportunities to OPT participants, as the plaintiff alleges, but *fewer*.

It's also worth noting that under the plaintiff's view of OPT participants as labor market competitors, mentorship requirements therefore would *help* native STEM workers by imposing restrictions and further costs on hiring OPT participants.

## II. The OPT Program Does Not Deprive Members of Statutory Labor Protections

The plaintiff alleges that OPT has caused injury it by "depriv[ing]…members of statutory labor protective arrangements," that Congress "created the H-1B visas program for college educated labor [which…] incorporates protections for American workers, including the number of such workers," and that OPT allows "college-educated labor in computer fields to work in the job market without complying with the statutory protections under the H-1B program, denying Washtech members of those protections." Complaint at 85, 96, 97.

First, F-1 students participating in OPT as part of their educational experience are subject to different eligibility requirements than H-1B, contra the claim by the plaintiff that H-1B is "the very type of guestworker labor allowed to enter the U.S. job market under OPT." Complaint at 11. Each program has different rules, which afford different kinds of protection. For instance, H-1Bs are not restricted to training relating to their field of study and F-1 OPT recipients are not restricted to specialty occupations.

5

H-1Bs may be anywhere in their careers, but F-1 OPT recipients must be recent graduates.

Second, the H-1B is not the *exclusive* visa for college educated labor, which also includes the J visa, for instance. And college educated workers may also use other visas like the TN-1 visa. All of these visas have different admissions requirements and different eligibility requirements and protections for natives. Some may not be available to any given college graduate interested in working in the United States, but the examples are sufficient to demonstrate that visa categories feature overlap. That any given alien may be eligible for an H-1B does not mean that the H-1B is the only option available to them. This is a feature of the framework Congress designed.

The plaintiff says that but for OPT, "OPT guestworkers [sic] would have to obtain a work visa authorized by Congress and conform to its labor protections—which in nearly all cases would be an H-1B visa." Complaint at 11. The same thing could just as easily be applied to *any* visa, not only F-1 OPT : "but for [x program], [x program participants] holders would have to obtain a different visa." Any argument of this form is vacuous: whichever visa an alien holds, they are always subject to the rules *of that visa*.

F-1 students on OPT are no more subject to the H-1B cap on the "number of such workers" than are H-1B recipients subject to OPT's shorter duration of employment, its non-renewability, or its necessary relevance to the recipient's field of study.

6

**III.     The OPT Program Provides Significant Economic Benefits By Driving Innovation and Growth**

   **A. OPT Program Helps Coordinate the Recruitment and the Retention functions of F-1 and H-1B visa programs**

The OPT program provides invaluable experience to graduates seeking on-the-job training as a capstone in their educational experience. For many international students, work experiences are an integral part of their education, providing the opportunities necessary to turn classroom experiences into useful knowledge that the student is more likely to retain and put into practice. It in no way detracts from the pedagogical function of OPT to note that the program serves other important functions as well. Notably, in addition to its educational purpose, OPT serves as a vital link between the F-1 and H-1B visa programs.  Neufeld Study at 2.

The relationship between the two programs was described well by the U.S. District Court for the District of Columbia: "F-1 and H-1B are integrally related...F1 and H-1B perform the interlocking task of recruiting students to pursue a course of study in the United States and retaining at least a portion of those individuals to work in the American economy." *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 74 F. Supp. 3d 247 (D.D.C. 2014).

In his 2005 testimony on the impact of SEVIS before Congress, Dr. C. D. Mote, Jr., president of the University of Maryland at College Park, explained why the interlocking task of recruitment and retention was vital to American interests: "undue

7

restrictions that hinder our ability to recruit outstanding talent from other nations threaten our technical and economic strengths and also our diplomatic efforts as well… To remain competitive in the coming decades, we must continue to embrace the most capable students and scholars of other countries. Our security and quality of life depend on it." *Tracking International Students in Higher Education: A Progress Report Hearing Before the Subcomm. On 21st Century Competitiveness and the Subcomm. On Select Educ. of the U.S. House of Representatives Comm. on Educ. and the Workforce*, 109th Cong. 109-5 (2005) https://bit.ly/31JWrSg.

DHS justified the STEM extension, recognizing the "waiting room" function of OPT and connecting it to labor market conditions:

> Many employers who hire F-1 students under the OPT program eventually file a petition on the students' behalf for classification as an H-1B worker…Because the H-1B category is greatly oversubscribed, however, OPT employees often are unable to obtain H-1B status within their authorized period of stay in F-1 status, including the 12-month OPT period, and thus are forced to leave the country. The inability of U.S. employers, in particular in the fields of science, technology, engineering and mathematics, to obtain H-1B status for highly skilled foreign students and foreign nonimmigrant workers has adversely affected the ability of U.S. employers to recruit and retain skilled workers and creates a competitive disadvantage for U.S. companies.

8 CFR § 214 and 274a (2008).

To that end and operating as it does at the intersection of F-1 and H-1B, the OPT program has been successful in its role in recruiting candidates for retention. OPT can accurately be described as the largest high-skilled worker recruitment program in the country, bringing over 200,000 new high-skilled foreign workers into the labor

8

market each year, compared to only about 180,000 new H-1B visas issued each year. Neufeld Study at 2.

However, because OPT is nonrenewable and lasts for a relatively short duration, the H-1B program still contributes more high-skilled workers at any one time. And however successful OPT is at recruitment, retention is ultimately reliant on the H-1B, of which only 85,000 can be awarded per year to those not employed by universities and other cap-exempt employers. In this way, OPT is limited to expanding the pool of potential guest workers (and a larger applicant pool naturally makes for better hires), but does not generally increase the number of guest workers or influence retention, which is constrained by the relative scarcity of H-1B visas.

### B. *OPT Increases Human Capital and Innovation*

The plaintiff alleges that "the 2016 OPT Rule singles out STEM occupations for an increase in foreign labor through longer worker periods with no justification" Complaint at 83, 84.

But DHS did justify the original STEM extension on the grounds that it better coordinates the recruitment and retention functions of both programs, with the attention on STEM because STEM:

> Many employers who hire F-1 students under the OPT program eventually file a petition on the students' behalf for classification as an H-1B worker…Because the H-1B category is greatly oversubscribed, however, OPT employees often are unable to obtain H-1B status within their authorized period of stay in F-1 status, including the 12-month OPT period, and thus are forced to leave the country. The inability of U.S. employers, in particular in the fields of science, technology, engineering

9

> and mathematics, to obtain H-1B status for highly skilled foreign students and foreign nonimmigrant workers has adversely affected the ability of U.S. employers to recruit and retain skilled workers and creates a competitive disadvantage for U.S. companies.

8 CFR § 214 and 274a (2008).

STEM OPT provides valuable human capital to the U.S. labor force, and DHS's special attention to STEM is in line with the conclusions of government agencies which have highlighted the specific shortages of labor faced by the private sector in the STEM labor market. Notably, the President's Council of Advisors on Science and Technology concluded that "Economic projections point to a need for approximately 1 million more STEM professionals than the U.S. will produce at the current rate over the next decade if the country is to retain its historical preeminence in science and technology." Exec. Office of the Pres., President's Council of Advisors on Science and Technology, *Engage to Excel: Producing One Million Additional College Graduates With Degrees in Science, Technology, Engineering, and Mathematics*, (February 2012), https://bit.ly/2kCNd7p.

And the Bureau of Labor Statistics concluded that "A comprehensive literature review, in conjunction with employment statistics, newspaper articles, and our own interviews with company recruiters, reveals a significant heterogeneity in the STEM labor market: the academic sector is generally oversupplied, *while the government sector and private industry have shortages* [emphasis added]." Bureau of Labor Statistics, *STEM crisis or STEM surplus? Yes and yes*, (2015) https://bit.ly/2iiJ5eg.

STEM also is justified by its important role in driving innovation and economic growth. The Niskanen study investigated the role OPT and the STEM extension specifically, had on patenting, a proxy for innovation, and found that by making teams more productive and contributing to technological diffusion, every two OPT students led to a state producing about one additional patent. Neufeld Study at 6.

## CONCLUSION

Niskanen respectfully urges this Court to deny Plaintiff's Motion for Summary Judgment and uphold this vital program.

DATED: November 25, 2019

                                              Respectfully submitted,

                                              */s/ Megan C. Gibson*
                                              Megan C. Gibson
                                              DC Bar No. 1021191
                                              NISKANEN CENTER
                                              820 First Street, NE
                                              Suite 675
                                              Washington, DC 20002
                                              (202) 899-1172
                                              mgibson@niskanencenter.org

                                              *Counsel for Amicus Curiae*